In re the MARRIAGE OF Susan S. CELLA, (now Susan S. Phillips), Petitioner-Respondent,

and

Charles J. Cella, Respondent-Appellant.

No. 47822.

Missouri Court of Appeals, Eastern District, Division Twelve.

Sept. 11, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 16, 1984.

Application to Transfer Denied Nov. 20, 1984.

Walter M. Clark, Richard B. Scherrer, St. Louis, for respondent-appellant.

Theodore S. Schechter, Frances M. Luehrman, Clayton, for petitioner-respondent.

DOUGLAS W. GREENE, Special Judge.

The marriage of Charles J. Cella and Susan S. Cella, now Susan S. Phillips, was dissolved on July 20, 1978. The couple had three children, John, Louis and Harriet. In accordance with a separation agreement executed by both parties, the dissolution decree provided that Susan would have custody of the three children, who at that time were 15, 13 and 8 years of age, respectively, while Charles was awarded extensive temporary custody rights. In addition, Susan was not to move the residence of the children from the state of Missouri without the consent of Charles.

In August of 1982, Susan married Blaine Phillips, an attorney who lived in Wilmington, Delaware, and made plans to live in Pennsylvania with him. Charles filed a motion in the trial court to enforce the provisions of the decree forbidding Susan from moving the residence of the children from Missouri to some other state. The motion also requested that the custody of the children be transferred to him. Charles also requested that Susan be cited for contempt for taking Harriet out of the state of Missouri without his permission. Susan countered with a motion to modify the dissolution decree.

At the time of the hearing on the various motions, John was 20 years old and in college. Louis was 18, and Harriet was 13. The evidence shows that John and Louis indicated a desire to live with their father in St. Louis, and that Susan had no objection to their primary custody being transferred to their father. The trial court, after hearing voluminous evidence (the transcript runs 1,574 pages), permitted Susan to remove Harriet's residence from St. Louis to the states of either Delaware or Pennsylvania, transferred custody of the two boys to Charles, granted liberal temporary custody rights of Harriet to Charles, and awarded attorney fees of $12,182.50 to Susan's attorneys, which amount included a fee of $2,000 to Susan's former attorney, Harold Bamburg. Charles appealed the order.

The first three points relied on in this appeal are related, and will be considered together. Charles contends that the trial court's order permitting Susan to take Harriet to Delaware or Pennsylvania, in order that they could live with Susan's new husband, was not supported by substantial evidence, was against the weight of the evidence, and resulted from an incorrect declaration and application of law by the trial court. He also contends that he should have been awarded custody of Harriet, since the custody of the children should not be split between the two parents, and that it was in Harriet's best interest to live with her father.

■ Charles contends that the provision of the dissolution decree providing that the residence of the children shall not be changed from Missouri without prior consent of Charles was res judicata and binding on the parties, the trial court, and

this court, citing *Price v. Price,* 281 S.W.2d 307, 309 (Mo.App.1955). *Price* merely holds that a prior judgment dismissing a wife's divorce suit for failure to prove certain indignities was res judicata as to her later averment of the same indignities in a separate maintenance action, and is not applicable here.

Trial court orders regarding child custody and visitation privileges are always modifiable when the best interests of the child dictate a change, and the parties cannot preclude or limit, by a separation agreement, the trial court's authority to make such changes as it deems necessary in custody provisions of a dissolution decree. *Williams v. Cole,* 590 S.W.2d 908, 911 (Mo. banc 1979). Recent Missouri decisions emphasize that child custody orders, or separation agreements, that confine children to a certain geographical area are not cast in stone, but are modifiable when the best interests of the child indicates that a change in locale of the child's residence is necessary. See *Elfrink v. Elfrink,* 620 S.W.2d 386, 387–388 (Mo.App.1981), and *In re Marriage of Dusing,* 654 S.W.2d 938, 943 (Mo.App.1983). Such reasoning applies here. The contention has no merit.

■ Charles next contends that the transfer of residence was not in Harriet's best interest, and that Susan failed to present substantial evidence that it was. This is a fact question which the trial court resolved in favor of Susan. Its finding that Harriet's best interest mandated that her custody continue with her mother, which necessitated a move to her mother's new home in Pennsylvania, should be deferred to unless such finding is in conflict with the clear preponderance of the evidence, and manifests a showing of a clear abuse of discretion on the part of the trial court.

■ The issue of Harriet's custody was hotly contested, and the evidence offered by Charles conflicted markedly with that offered by Susan. It serves no useful purpose to make a permanent record of the details of the controversy. However, there is substantial evidence in the record to support the trial court's finding that it was in Harriet's best interest to move to Pennsylvania with her mother. Harriet has lived with Susan all of her life, and has been in her custody since she was 8 years old. At the time of the hearing, Harriet had lived with her mother in Pennsylvania for one year. Mother and daughter have a close relationship and participate in many activities together. Harriet gets along well with her stepfather. She has made a good adjustment to her new school and has made new friends. Her present home is comfortable and well suited to her needs. She maintains a good relationship with her father. Charles has extremely liberal temporary custody and visitation privileges with Harriet. Charles will not suffer financial hardship in exercising his temporary rights as he is a multimillionaire, whose 1981 gross income was $746,000. The record supports the trial court's continuing Harriet's custody in Susan and permitting the change of residence.

Charles' third argument on the question of Harriet's custody is that he is a better qualified and fit person to have Harriet's custody than Susan is, and that the trial court erred in not so finding. This is a fact question which was decided adversely to Charles by the trial court. Our review of the record, as stated before, indicates there is substantial evidence to support the trial court's orders regarding Harriet's custody and the custody of the two boys, that such order is not against the weight of the evidence, and it is not based on any erroneous declaration or application of law. This being so, those portions of the decree dealing with the custody, temporary custody, and visitation rights with the children should be affirmed. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ The fourth point raised by Charles in his appeal is that the trial court abused its discretion in denying his motion to cite Susan for civil contempt of court for violating a court order forbidding her to remove Harriet from the state of Missouri pending hearing on the various custody motions.

The record indicates that on August 17, 1982, a predecessor trial judge entered an order which recites that it was based on Harriet's testimony in chambers and the testimony of Charles and Susan given in open court, that it was in Harriet's best interest that she be allowed to leave Missouri to live with her mother. Susan was on her honeymoon when the order was filed. Harriet was with her father in Hot Springs, Arkansas, at that time. Susan returned from her honeymoon on August 29, learned of the court order at that time, and left with her husband for their new home in Pennsylvania on August 30. While they were en route, the trial judge, on August 31, ex parte, and on application of Charles, set aside his order of August 17, ordered a full hearing on the merits of the custody questions, and restrained Susan from removing any of the children from the state of Missouri pending the hearing. This order was served on Susan in her new home in Pennsylvania on September 3. The time when the order was served on Susan is in dispute. Susan claims it was served on her between 11 A.M. and 12 noon. Meanwhile, Harriet, who had returned from Hot Springs, had gone to a swimming party on the morning of September 3. Susan's mother, Martha Simmons, without notice to Charles, picked Susan up at the swimming party she was attending, and had the child flown to Pennsylvania, where Harriet joined Susan. Charles then filed his motion to have Susan cited for contempt for violating the court order of August 31. An order to show cause why Susan should not be held in contempt of court was issued and served.

Susan returned to Missouri with Harriet on September 8, as ordered by the trial court. Charles then filed a motion for temporary custody for a limited period which was granted on September 24, 1982. However, the order recited that Charles was to make arrangements to return Harriet, by commercial airline, to Susan in Philadelphia, Pennsylvania, on September 26. The order also set out detailed arrangements for temporary custody of Harriet by Charles during the Thanksgiving and Christmas holidays, but, in each case, ordered that the child be returned to Susan *in Pennsylvania* when the holiday was over.

We regard this claim of error as a tempest in a teapot. Even if we assume that Susan had knowledge of the August 31 order prior to the time the grandmother left St. Louis with the child on September 3, and even if we further assume that Susan and her mother were in collusion to violate the court's order of August 31, Susan, by returning the child to Missouri on September 8, may have been viewed by the trial court as purging herself of contempt [*Saab v. Saab*, 637 S.W.2d 790, 792 (Mo. App.1982)], since civil contempt proceedings are to coerce a party to comply with court orders and the civil contemner has the power at any time to avoid possible punishment by complying with the court order. We find no abuse of discretion in the trial court's action in denying the motion to cite Susan for civil contempt. The point is denied.

Charles' remaining point concerns the award of $2,000 attorney fees to attorney Harold Bamburg, who formerly represented Susan in this lawsuit.

Mr. Bamburg testified at trial that he was owed $2,641.69 for work that he had done for Susan on this case. The trial court had a right to believe him, if it wanted to. *Trenton Trust Co. v. Western Sur. Co.*, 599 S.W.2d 481, 483 (Mo. banc 1980). Trial courts are granted wide discretion in deciding who should pay the attorney fees in actions of this type. *Kieffer v. Kieffer*, 590 S.W.2d 915, 918 (Mo. banc 1979), and *Viers v. Viers*, 600 S.W.2d 214, 216 (Mo.App.1980). The evidence here showed that Charles had assets of at least two and one-half million dollars. Susan, on the other hand, had an annual income of approximately $15,000, $7,000 of which was child support for Harriet, and her assets were minimal compared to those of her former husband. The trial court did not abuse its discretion in awarding Mr. Bam-

**396**

burg $2,000 attorney fees. The point is denied.

The trial court's order of September 2, 1983, modifying the dissolution decree of July 20, 1978, is affirmed, in all respects.

SNYDER, J., and DONALD BARNES, Special Judge, concur.