Susan Gale JONES, Appellant,

Juveniles, Plaintiff,

v.

Michael Dennis JONES, Respondent.

No. WD 50565.

Missouri Court of Appeals, Western District.

Aug. 1, 1995.

---

Gary Lee Stamper, Columbia, for appellant.

Lori J. Levine, Jefferson City, for respondent.

Terri Gonder, Columbia, Guardian ad litem.

Before FENNER, C.J., P.J., and BRECKENRIDGE and ELLIS, JJ.

FENNER, Chief Judge.

Susan Gale Jones (Mother), appeals from an order modifying a decree of dissolution from her marriage to Michael Dennis Jones (Father), as it pertained to the removal of the minor children from the State of Missouri and from the denial of her request for an increase in child support. Mother presents three points on appeal claiming the trial court erred by: (1) ordering the minor children be returned to Missouri because mother argues that she is entitled to custody, having previously been granted permission to remove the children from the State, and she further contends that permission to remove is non-modifiable where custody is not at issue under section 452.377, RSMo 1994;[1] (2) ordering the minor children be returned because she alleges no substantial evidence supports a change in circumstances and the parties are collaterally estopped from relitigating the issue of removal; and (3) denying her counter-motion to modify child support because she represents that application of Rule 88.01 would result in a change in support by 20% or more and the court has not expressly stated the necessity of a downward departure from the guidelines. The judgment of the trial court is affirmed.

The marriage of the parties was dissolved on September 23, 1993. The parties had entered into a separation agreement on August 17, 1993. In this agreement, Mother and Father agreed that they would share joint legal custody of their minor children, Michael, born March 26, 1984; Atlantis, born September 29, 1986; and John, born September 15, 1988. Mother was given primary physical custody of the children. The separation agreement also contained a clause stating:

> The parties further agree that Wife shall have the right to remove the minor children from the State of Missouri to reside in Charleston, South Carolina. Husband further agrees that Wife shall have the right to move with the children to any other place in the continental United States upon no less than sixty days' advance notice to Husband.

Shortly after signing the agreement, Mother went to Charleston, South Carolina to look for a house and find a school for the children. Mother called Father from Charleston asking that he take her back. Father testified that Mother told him that she had made a horrible mistake and that it was important for the children to be close to him. Mother returned to Missouri and enrolled the children in Christian Chapel Academy, a private Christian school in Columbia, Missouri. At the date of the dissolution decree, she was residing in Columbia, Missouri. Father resided in

---

1. All sectional references are to Missouri Revised Statutes 1994 unless otherwise indicated.

Mexico, Missouri, where he practiced medicine as an obstetrician-gynecologist. Mother purchased a home in Mexico, Missouri and Father believed that no further move would occur. Before Mother moved to Mexico, Missouri, Father saw the children nearly every day. After the move, Father saw the children every weekend and, at times, during mid-week.

At the time of the dissolution Mother had not held employment outside of the home since Michael's birth. Father testified that at the time he signed the separation agreement, he felt that removal of the children from Missouri was in their best interests. The reason Father felt this way was because of the circumstances surrounding Mother's affair with another man. Father was instrumental in trying to establish a new school in Mexico, the Cornerstone Christian Academy. Mother had an affair with Pete Greenwell, the man Father hired for the position of principal at the school. According to Father, the affair was a very public matter and he felt that the children would suffer repercussions from it.

While the children lived in Columbia, Father established a close relationship with the children, participating in many activities with them, especially after his move to a farm. In March, 1994, Mother resumed her relationship with Pete Greenwell. Father, fearing that Mother would remove the children from the state, filed a motion to modify the dissolution on April 7, 1994, claiming a substantial and continuing change in circumstances rendering certain portions of the separation agreement as not in the best interests of the children. His request for an injunction was denied however, and Mother moved to South Carolina on May 19, 1994. The children joined her there at the completion of Father's summer custody period.

Mother married Greenwell in July. The two kept their marriage secret for a time allegedly to give the children time to adjust. Father has encountered difficulty in his contact with the children. Mother often refuses to discuss travel plans in advance with Father and the children's telephone conversation with Father are monitored. Mother has discontinued music and dance lessons for the children. Mother apparently moved to South Carolina to put distance between herself and Father. She did not move to be with family or to improve her economic circumstances.

Father paid $2,000.00 per month in direct child support. He maintained health insurance on all of the children, paid the first $1,000.00 annually in uninsured medical costs, paid for routine dental care, maintained life insurance for the benefit of the children and paid for their tuition in a private school.

A hearing was held on Father's motion on November 18, 1994. On November 30, 1995, the trial court entered its order sustaining Father's motion to modify. The court ordered that the children be returned to Missouri on or before February 1, 1995. Furthermore, the trial court denied Mother's counterclaim for an increase in child support. This appeal followed.

### STANDARD OF REVIEW

■ Modification of a prior decree of custody depends upon proof of facts showing that a change of circumstances has occurred since the prior decree in the circumstance of the child or the child's custodian. *Lee v. Lee,* 767 S.W.2d 373, 375 (Mo.App.1989). Such standard is codified in section 452.410, which states, in pertinent part:

[T]he court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

■ Review of this court tried case is governed by the familiar principles of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's decision must be affirmed unless there is no substantial evidence to support it; it is against the weight of the evidence; or it erroneously declares or applies the law. *Id.* Furthermore, the trial court has the prerogative to determine the credibility of the witnesses and may accept

all, part, or none of their testimony. *Randel v. McClanahan,* 760 S.W.2d 607, 608 (Mo. App.1988). In our review of a court tried case our chief concern is the correctness of the result reached by the trial court and we will affirm the trial court's judgment if it is deemed correct under any reasonable theory supported by all of the evidence. *Id.* The trial court is granted broad discretion; the trial court's judgment will be affirmed even if the evidence would support another conclusion. *Wild v. Holmes,* 869 S.W.2d 917, 919 (Mo.App.1994). Our paramount concern is, of course, the best interests of the child. *Carter v. Schilb,* 877 S.W.2d 665, 667 (Mo. App.1994); *Tucker v. Tucker,* 778 S.W.2d 309, 312 (Mo.App.1989).

## RETURN OF THE CHILDREN TO MISSOURI

 Mother contends that the trial court erred in ordering the children to be returned to Missouri because she had been granted permission to remove the children by order of the court and with the written consent of Father and that such permission is non-modifiable where custody is not at issue. Mother construes the language of section 452.377 in support of her position. The statute provides:

A person entitled to the custody of a child shall not change the residence of the child to another state or remove the child from this state for a period of time exceeding ninety days except upon order of the court or with the written consent of the parties with custody or visitation rights. Where the noncustodial person has been given visitation rights by the custody decree, such court permission may be granted only after notice to the person having visitation rights and after opportunity for hearing. Violation of a court order under this section may be deemed a change of circumstance under section 452.410, allowing the court to modify the prior custody decree.

Mother focuses on the language "except upon order of the court or with the written consent of the parties with custody or visitation rights." She claims that this language imposes only one condition precedent to the removal of the children; either (1) by order of the court or (2) written consent. She further extends the argument claiming that once the parties reach an agreement between themselves, a judicial determination is thereby foreclosed.

Were the question in this case whether or not Mother had the right to take the children to South Carolina, her analysis might be appropriate. However, the question does not concern the right or wrong in the physical act of moving the children to South Carolina, but the propriety of such a move considered in light of Father's motion to modify. To hold that the trial court is foreclosed from considering the issue in light of the separation agreement signed by the parties is repugnant to the care and concern for children manifested by both statutory and case law in the State of Missouri.

It is undisputed that the separation agreement signed by Mother and Father contains a provision whereby Mother is allowed to take the children out of state. Moreover, there is no dispute as to the freedom of the parties to enter into such agreement. Section 452.325.1 provides that, "the parties may enter into a written separation agreement containing provisions for the maintenance of either of them, the disposition of property owned by either of them, and the custody, support and visitation of their children."

 Provisions concerning the custody, support and visitation of minor children do not bind the trial court. *Distler v. Distler,* 877 S.W.2d 184, 185 (Mo.App.1994); *In re Marriage of Wofford,* 589 S.W.2d 323, 328 (Mo.App.1979). Conversely stated, the terms of a separation agreement are binding on the trial court except as they relate to the care and support of children. *Schumann v. Schumann,* 812 S.W.2d 541, 543 (Mo.App. 1991); *Baird v. Baird,* 760 S.W.2d 571, 572 (Mo.App.1988). Agreements between parents that concern minor children are merely advisory. *Distler,* 877 S.W.2d at 185. The court in *In re Marriage of Cella,* 679 S.W.2d 392, 393 (Mo.App.1984), explains:

Trial court orders regarding child custody and visitation privileges are always modifiable when the best interests of the child dictate a change, and the parties

cannot preclude or limit, by a separation agreement, the trial court's authority to make such changes as it deems necessary in custody provisions of a dissolution decree. Recent Missouri decisions emphasize that child custody orders, or separation agreements, that confine children to a certain geographical area are not cast in stone, but are modifiable when the best interests of the child indicates that a change in locale of the child's residence is necessary. (citations omitted)

Under the above authority it is clear that the trial court was not bound by the separation agreement and the provision in it, a provision relating to the care of the children, was modifiable by the trial court. Certainly the issue was not *res judicata. Id.* Nor do principles of collateral estoppel apply. *See Knoblauch v. Jones,* 613 S.W.2d 161 (Mo. App.1981).

■■■ We turn now to the question of whether there was sufficient evidence to support the trial court's determination that a change of circumstances had occurred mandating the modification of the decree in the best interests of the children. The trial court did not make specific findings of fact and conclusions of law. It did, however, mention several factors it considered in making the decision: that Mother had relocated to Charleston, South Carolina with her new husband; that the children had spent their whole life in central Missouri and had relatives on both sides of the family living in Missouri; that Mother presented no meaningful reason for the move except her desire to distance herself from Father and live in Charleston; and that the children expressed the desire to have regular and meaningful contact with both parents. Mother claims that none of these factors, either alone or taken together, justify a finding of a change of circumstances as required by section 452.410. We disagree.

After the separation agreement was signed, Mother immediately went to South Carolina to search for a house and to find a school for the children. She experienced a change of heart and returned to Missouri for the better part of a year, buying a house and settling the children into school. Her move to South Carolina came well after the children were settled in Missouri and accustomed to spending more time with Father. Father cites *LaFon v. LaFon,* 811 S.W.2d 360 (Mo. banc 1991), as authority for the proposition that Mother's change of mind and move back to Missouri was in itself a change in circumstances. While this may be correct, certainly the combination of Mother's continued presence in Missouri and subsequent move to South Carolina is sufficient to allow for a finding on the part of the trial court to find a change in circumstances as required by section 452.410, "upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree."

■■■ We turn then to the question of whether the trial court's order was in the best interests of the three children. Initially, we note that the best interests of a child are facilitated by continued interrelationships with both parents. *O'Leary v. Stevenson,* 782 S.W.2d 109, 111 (Mo.App.1989). This is not to say that the right of the custodial parent to change the place of residence is completely subordinate to this consideration. "In our highly mobile society, it is unrealistic to inflexibly confine a custodial parent to a fixed geographical area, if removal to another area for reasons such as change of employment, remarriage, etc., is consistent with the best interest of the minor children." *In re Marriage of Greene,* 711 S.W.2d 557, 564 (Mo.App.1986). Four factors have been identified as relevant to the determination of the propriety of a custodial parent's relocation: (1) the prospective advantages of the move in relation to the general quality of life of the custodial parent and the child; (2) the integrity of the custodial parent's motive for the move; (3) the integrity of the noncustodial parent's motives in challenging the move; and (4) the realistic opportunity for visitation. *Michel v. Michel,* 834 S.W.2d 773, 777 (Mo. App.1992). *See also Carter v. Schilb,* 877 S.W.2d 665, 667 (Mo.App.1994); *Wild v. Holmes,* 869 S.W.2d 917, 919 (Mo.App.1994). The factors favor Father in this case.

We first examine the prospective advantages of the move in relation to the general quality of life of the custodial parent and the

children. There appears to be no clear advantage to Mother. She is not economically benefitted by the move. In fact, she may be more limited in her profession. Mother is a licensed nurse in Missouri. She cannot practice her profession in South Carolina without additional training. Similarly, her new husband did not make the move for any economic advantage. No showing was made that the move was undertaken for employment opportunities, health problems or for any reason of note. How the quality of life has improved for the children is also unclear. Certainly, they do not see Father as much as they did before the move. They do not have the same chance to see other relatives residing in Missouri. Mother apparently made the move to distance herself from Father. "The mere desire, verses the need to move is not sufficient." *Carter*, 877 S.W.2d at 667.

The second factor, the integrity of the custodial parent's motive for the move, also favors Father. As discussed above, Mother's motive for the move was to put distance between herself and Father. This is certainly not in the best interests of the children. This is especially true as all of the children expressed their desire to see more of their father. The guardian ad litem, when asked for a recommendation, stated that although their life in South Carolina was good:

Atlantis basically stated that she wanted to continue living with her mother but she wanted to see her father every day. She understands that that's not a realistic option no matter where she lives at this point. The boys both indicated they wanted to see their dad more. They expressed various opinions about, you know, where they wanted to live and where they wanted to, where they wanted to relocate or stay. But basically my topic of conversation with them concerned the visitation with their father and they indicated that they all want more. And that's a uniform opinion.

The third factor we consider is the integrity of the noncustodial parent's motives in challenging the move. Father wants to spend more time with his children. There is no financial benefit for Father in challenging the move. He has not sought a reduction in child support.

Finally, the fourth factor, the realistic opportunity for visitation, must be examined. Certainly, South Carolina is some ways distant from Missouri. The cost of air travel, the arrangements needed for minors to fly and the time involved are all relevant to this inquiry. The record reflects a disturbing reluctance on Mother's part in cooperating with Father regarding his contact with the children. There is some suggestion that his telephone calls to the children are closely monitored. Mother has been reluctant to arrange Father's visitation so as to maximize the advantage to the children.

Review of all four factors indicates that they favor Father. There is sufficient evidence supporting the trial court's finding that the modification would be in the best interests of the children. Therefore, the order of the trial court sustaining Father's motion to modify is affirmed.

### CHILD SUPPORT

■ Mother contends that the trial court erred in denying her countermotion to modify the child support award because application of Rule 88.01 indicates a change of more than 20% from the existing amount and the trial court did not expressly state the necessity of a downward departure from Rule 88.01. *See Vehlewald v. Vehlewald*, 853 S.W.2d 944 (Mo.App.1993). Pursuant to the initial decree, Father's support obligation was calculated at $2,000.00 per month or $666.66 per child per month. In addition, Father was required to maintain medical insurance on the children ($352.00 per month); to pay the first $1,000.00 annually of uncovered medical expenses and 50% of the expenses over $1,000.00 ($83.33 per month); to provide routine dental care ($30.00 per month); to pay for a private Christian school up to $2,500.00 annually per child ($403.00 per month); and to maintain life insurance for the benefit of the children ($674.14 per month). Father's obligations total $3,542.47 per month. Mother's Form 14 shows that the presumed child support owed by Father per month is $2,825.00. She takes this total and compares it against the $2,000.00 per month Father pays in child support and claims a variance of over 20%. Not surpris-

ingly, Father's Form 14 shows a different amount of presumed child support, $2,175.00 per month. Father's Form 14 imputes income to Mother in the amount of $1,917.00 per month. We do not reach the question of whether or not income is properly imputed to Mother, although the circumstances in the instant case strongly suggest that such imputation was proper. *See Stanton v. Abbey*, 874 S.W.2d 493, 499 (Mo.App.1994). Because Mother has not factored in the other amounts Father pays in support of the children in her calculations, she is incorrect in her assertion that the total obligation varies by over 20% of the amount that Father now pays. Child support may include payments other than those made monthly to the custodial spouse. *Graf v. Bacon*, 800 S.W.2d 88, 90 (Mo.App.1990). Father acknowledges that he had not paid Mother the tuition for the children's school in Charleston because of a dispute with Mother. Even adjusting calculations to reflect this, Mother still cannot make the requisite showing. Thus, the trial court did not err in failing to modify Father's child support obligation.

The order of the trial court is affirmed in all respects.

All concur.