953 S.W.2d 95 (1997)
In re the MARRIAGE OF Zhitana Roxanna DANESHFAR and Michael Robert Sly.
Zhitana Roxanna DANESHFAR, Petitioner-Respondent,
v.
Michael Robert SLY, Respondent-Appellant.
Nos. 21258, 21274.
Missouri Court of Appeals, Southern District, Division One.
August 22, 1997.
*97 Randall J. Reichard, Craig F. Lowther, Lowther, Johnson, Joyner, Lowther, Springfield, for Respondent-Appellant.
J. Kaye Irwin, Guardian Ad Litem, Theodore Von Willer, Jr., Springfield, for Petitioner-Respondent.
Before BARNEY, P.J., and PREWITT and GARRISON, JJ.
PER CURIAM.
Michael Robert Sly (Father) appeals from a judgment entered on his amended motion to modify a dissolution decree, and on Zhitana Roxanna Daneshfar's (Mother) motion, as custodial parent, to move with their child from Missouri. He contends that the trial court erred in permitting Mother to move the child to Louisiana; in not permitting two psychologists to testify; and in denying him custody on his motion to modify.
In the decree dissolving their marriage, entered in September, 1989, the trial court awarded Mother custody of their only child, born on February 17, 1989, and granted Father reasonable visitation rights. That decree was subsequently modified in May, 1994, establishing a more definitive schedule for Father's visitation rights.
On September 7, 1995, Mother filed a motion requesting permission to move the residence of the child to Louisiana. Father was served with the motion on September 11, 1995, and the trial court took it up on September 26, 1995. Father did not appear, and the court sustained it. The trial court subsequently set aside that order on its own motion because it was entered prior to the expiration of thirty days after Father was served with the motion.
Even though Mother knew the court had set aside its order granting her permission to leave Missouri, she nevertheless moved with the child to Lafayette, Louisiana, on November 6, 1995. Father filed a motion to modify and a motion for temporary custody. He subsequently filed an amended motion to modify requesting primary physical custody of the child.
Mother's motion and Father's amended motion to modify were heard together on September 10 and 11, 1996. At the close of the evidence, the child's guardian ad litem (GAL) recommended that primary custody be transferred to Father. The trial court's judgment, however, inter alia, sustained Mother's motion to move with the child to Louisiana, and denied Father's request for primary custody. Both Father and the GAL filed notices of appeal. Those appeals were consolidated by this court, and Father and GAL filed a joint brief.[1]
The scope of appellate review in a court tried case is pursuant to Rule 73.01(c), as construed in Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Murphy, 536 S.W.2d at 32. Due regard is to be given to the opportunity of the trial court to have judged the credibility of witnesses. Rule 73.01(c)(2). We accept as true the evidence and inferences favorable to the result reached by the trial court and disregard contrary evidence, mindful that the trial court was free to believe or disbelieve all, part or none of the testimony of any witness. T.B.G. v. C.A.G., 772 S.W.2d 653, 654 (Mo. banc 1989). We are also mindful of the familiar axiom that where, as here, no party requests findings of fact and the trial court makes none, all fact issues shall be considered as having been found in accordance with the result reached. Rule 73.01(a)(3); In re Marriage of Fry, 827 S.W.2d 772, 773 (Mo. App. S.D.1992).
In his first point, Father contends that the trial court's judgment sustaining Mother's motion for permission to remove the child from Missouri was against the weight of the evidence and constituted a misapplication of law. In her motion, Mother alleged that she had an employment opportunity *98 in Louisiana which would increase her income, eliminate her exposure to hazardous chemicals, decrease the number of hours she was required to work (thereby increasing the time she had to spend with the child), increase the child's opportunity to have contact with relatives living in Louisiana, and that she had a home available to her there which was equal to or better than the one she had in Missouri. She also alleged that although the move would require an alteration of Father's weekend visitation schedule, his temporary custody during the summer months and holidays could be expanded, which would result in an increase in the amount of time he could spend with the child.
The evidence indicated that Mother, who has a degree in chemistry, was employed in a laboratory in Springfield. Sometime prior to August 28, 1995, she accepted a job offer from her brother, a physician in Lafayette, Louisiana which increased her annual income from $19,000 to $24,000. She did not, however, look for other employment in Springfield before accepting the job in Louisiana. On August 28, 1995, Mother placed her Springfield home on the market, and at about the same time quit her job at the lab, where she said that she was exposed to harmful chemicals. On September 7, 1995 she filed her motion with the court requesting permission to move the child to Louisiana, and as indicated, the court sustained that motion on September 26, 1995. Mother learned, however, before actually moving to Louisiana that the order granting permission to move from the state had been withdrawn. She testified that by the time she learned that, she had already accepted the job in Louisiana, and no longer had a job in Springfield. She then decided to move to Louisiana, and did so on November 6, 1995 because, according to her, she was "stuck."
In support of his contention that the trial court erred in permitting Mother to move the child to Louisiana, Father argues that she moved the child prior to the judgment, in violation of § 452.377;[2] the move has unreasonably inhibited his visitation; Mother has a history of denying him meaningful contact with the child; the child has more relatives in Missouri than Louisiana; the GAL recommended that the child remain in Missouri in his custody; and Mother made no attempt to find other employment in Springfield.
Father cites O'Leary v. Stevenson, 782 S.W.2d 109, 111 (Mo.App. W.D.1989), for the proposition that Missouri courts view the removal of children from this state with "marked displeasure." That case also contains language indicating that the best interests of a child are best served by continued relationships with both parents, and that as a general premise permission to remove a child from this state is denied if the practical consequence is to deny the child reasonable opportunity for contact with the other parent. Id.
The paramount concern in deciding requests to move a child from this state is the best interests of the child. Carter v. Schilb, 877 S.W.2d 665, 667 (Mo.App. W.D. 1994). In Michel v. Michel, 834 S.W.2d 773 (Mo.App. S.D.1992), this court reversed the trial court's denial of permission for a mother to move with a minor children to Alabama. In doing so it recognized four factors which are particularly relevant in determining the propriety of relocation by a custodial parent:
1. The prospective advantages of the move in improving the general quality of life for the custodial parent and child,
2. The integrity of the custodial parent's motives in relocating (whether primarily to defeat or frustrate visitation and whether the custodial parent is likely to comply with substitute visitation orders),

*99 3. The integrity of the noncustodial parent's motives for opposing relocation and the extent to which it is intended to secure a financial advantage with respect to continuing child support,
4. The realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is permitted.
Id. at 777. In applying those factors, the Michel court also noted that "in our highly mobile society it would be unrealistic to inflexibly confine a custodial parent to a fixed geographical area if removal to another jurisdiction was consistent with the best interests of the minor child." Id. (quoting from In re Marriage of Bard, 603 S.W.2d 108, 109 (Mo. App. W.D.1980)).
Provisions to insure a relationship with both parents can be made without confining the residence of the custodial parent. Kline v. Kline, 686 S.W.2d 13, 17 (Mo.App. W.D.1984). Moving a child to another state may be permitted, even though visitation may be made more difficult. In re Marriage of Cornish, 780 S.W.2d 62, 65 (Mo.App. E.D. 1989). "[W]here the custodial parent, who has exercised the right of custody and control in a manner conducive to the welfare and development of the [child], demonstrates a need to move from the state in order to achieve employment and financial betterment which will subserve the best interest of the [child], judicial permission to remove the [child] is warranted." Flaton v. Flaton, 777 S.W.2d 948, 950 (Mo.App. E.D.1989).
In the instant case, the trial court, in orally announcing its decision, noted its displeasure with the fact that Mother took the child out of state without authority from the court. It concluded, however, that there was a reasonable basis for her to want to move to Louisiana and to take different employment which provided better pay, hours and benefits, and which was better for her health. In reaching that conclusion, the court said that it considered all of the factors, including the fact that the trial court had originally authorized the move, and the fact that we now live in a mobile society.
Significantly, the trial court also made other orders. Father's previous visitation schedule included alternating weekends as well as two weeks each summer. The trial court, however, modified his visitation schedule in recognition of the child's new residence by awarding him expanded visitation rights, including each spring break and from June 15 to August 15, or 4 days before school begins, each year. The trial court also acknowledged the fact that the travel required for Father to exercise visitation with the child was going to increase, and ordered that he and Mother share the transportation expenses necessary for the child to visit Father. It also reduced his child support obligation from $250 per month to $200.
Although Father argues that Mother's intent in moving was to restrict his access to the child, the trial court was not required to draw that conclusion. It was free to believe or disbelieve all, part or none of the testimony of any witness. T.B.G. v. C.A.G., 772 S.W.2d at 654. Contrary to Father's argument, the trial court was not required to conclude from the evidence that the move would have a negative effect on the child's quality of life. Additionally, the fact that the GAL recommended that the child remain in Missouri is not controlling on the trial court. State ex rel. Bird v. Weinstock, 864 S.W.2d 376, 385 (Mo.App. E.D.1993).
Father relies heavily on Jones v. Jones, 903 S.W.2d 277 (Mo.App. W.D.1995), which affirmed the trial court's order that children be returned to Missouri. In Jones, the appellate court noted that the Mother's motive in moving to South Carolina was to put distance between herself and the Father; there was no advantage to the Mother in making the move; and it was not made for employment opportunities, health reasons, or "any reason of note." Id. at 283. The court also noted that the Mother had not cooperated with Father regarding his contact with the children, and had monitored his telephone calls. Id.
In this case, Father points to evidence that Mother had restricted his telephone contacts with the child, had refused to pay one-half of the transportation expense related to the exercise of his other visitation privileges, and *100 had generally been uncooperative with regard to his visitation privileges. Certainly, these factors would weigh in favor of Father if found to be true by the trial court. As indicated earlier, all facts are construed as having been found in accordance with the judgment because findings of fact and conclusions of law were not requested. Rule 73.01(a)(3). Additionally, it is not necessary that all of the four factors discussed in Michel favor the party who was successful in the trial court. See Carter v. Schilb, 877 S.W.2d at 668.
The trial court had the opportunity to see the witnesses and judge their credibility, sincerity, and candor. This is an advantage that we do not have. Based on the record submitted here, we are unable to conclude that the order permitting Mother to move the child to Louisiana lacked substantial evidence to support it, was against the weight of the evidence, erroneously declared the law, or erroneously applied the law. In re Marriage of Bard, 603 S.W.2d at 109. Accordingly, we affirm that order. Point One is denied.
In another point relied on, Father contends that the trial court erred in excluding his testimony concerning suspected sexual abuse of the child on the theory that the incident was not disclosed in answers to interrogatories. He argues that Mother did not demonstrate to the trial court that an interrogatory had been propounded which required disclosure of the facts about which he sought to testify.
Father alleged in his amended motion to modify, among other things, that Mother had permitted the child to be sexually abused and molested while in her care. On direct examination, Father was asked about an incident which occurred during the child's two-week visitation with him in July, 1996 when he was playing with the child and one of his fiancé's children. Father testified that "[a]t one point we got [the fiancé's child] down, and we were kind of, you know, noogying him and twisting his ear, and stuff like that. And [the child] commented, `Bend him over and stick your finger up his butt.'" The trial court sustained Mother's objection that the information had not been disclosed in Father's answers to interrogatories.
Father argues that Mother had not submitted interrogatories to him which required the disclosure of this information. Our review of the interrogatories confirms that contention. Mother did serve an interrogatory requesting information about the allegations of sexual abuse and molestation such as the dates of any alleged occurrences, the location where they occurred and the identity of the perpetrator. We have discovered none of the interrogatories, however, which required disclosure of the information now in issue. Notwithstanding that fact, Father's answer to the interrogatory was "[e]xact dates and locations are unknown by me at this time. Based on report, evaluations and my son's actions I feel that abuse has occurred while in [Mother's] care and custody." Although the interrogatories did not require Father to disclose the information about which he sought to testify, he did indicate in his answer that the child's actions had led him to believe that abuse had occurred.
"Interrogatories should be presented in language of unmistakable meaning, otherwise they can become a tool for entrapment of the unwary." Dunn v. Wal-Mart Stores, Inc., 909 S.W.2d 728, 732 (Mo.App. S.D.1995). Because Mother did not file a brief in this case, we must decide the point without the benefit of her contentions. It is not our function, however, to become her advocate in doing so. Thummel v. King, 570 S.W.2d 679, 686 (Mo. banc 1978). Under the circumstances here, we hold that the trial court erred in excluding the testimony on the basis that it was not disclosed in answers to interrogatories. Allegations of sexual abuse and molestation of minors are of serious concern to our courts. Accordingly, we feel compelled to reverse the judgment entered in this case and remand it to the trial court for further proceedings.
Three of Father's other points relied on premise error as a result of the exclusion of the testimony of two psychologists whom he proposed to call at trial. These issues stem from Mother's second interrogatories, served on July 19, 1996, which included a request that Father identify each expert he intended *101 to call concerning any of the issues raised in his Amended Motion to Modify. Father's answer dated August 26, 1996 was "[u]nknown at this time, but I fully reserve the right to do so at a later date." At 1:00 P.M. on the day before trial (September 9, 1996), Father's attorney notified Mother's attorney that he intended to call Drs. Murney and Whipple, clinical psychologists practicing in Springfield, Missouri. Mother filed a motion to strike Father's designation of the two psychologists, and it was taken up the morning of trial. The trial court concluded that the disclosure was not timely and sustained the motion. The issue concerning the seasonable disclosure of the identity of these witnesses will not likely be an issue on remand and need not be addressed here. Likewise, because we are reversing and remanding the case, we do not address the issue raised by Father that the judgment was against the evidence and not in the child's best interests. Father, however, raises an additional issue concerning the exclusion of Dr. Murney's testimony which will likely re-occur on remand.
After the trial court held that Dr. Murney's testimony would be excluded because he was not seasonably identified in answers to interrogatories, Father called him to the stand to make an offer of proof. The record indicates that Dr. Murney saw the child in April 1996. In Father's offer of proof, Dr. Murney testified that Mother had made an earlier appointment to see him concerning her feeling that her child had been sexually abused. Dr. Murney then interjected that he wanted to make sure that he was not disclosing privileged communications. Mother's attorney informed the witness that Mother was opposed to him providing any information obtained from her, and as custodian of the child, she was also opposed to the disclosure of any information about the child. Dr. Murney then indicated that he would not testify because of the assertion of the privilege. After Father's attorney announced that Father waived any applicable privilege, the trial court announced that it was not going to direct Dr. Murney to answer questions. Mother's attorney, however, indicated that she would not waive the psychologist-patient privilege as it pertained to her or the child.
The GAL informed the trial court that it should be the GAL's decision whether to assert or waive the privilege on behalf of the child. The court responded by addressing Dr. Murney in the following way: "It's not my place to advise you what the law is legally, Doctor. You'll have to make your own conclusions whether you wish to constitute that as a waiver or not." Dr. Murney then announced his decision not to testify, including any testimony about having seen the child in 1996, noting that he considered it difficult, if not impossible, to answer questions without in some way disclosing information about Mother.
Father contends, in his point relied on, that the trial court erred in excluding Dr. Murney's testimony concerning the treatment of Mother and the child because "a party may not invoke the physician-patient privilege in any custody proceeding involving known or suspected child abuse or neglect which was at issue in this proceeding."
Section 337.055 provides that communications made to a licensed psychologist in the course of professional services are privileged and the psychologist may not testify about them without the prior consent of the person receiving the services. Section 210.140, however, provides, in pertinent part:
Any legally recognized privileged communication, except that between attorney and client, shall not apply to situations involving known or suspected child abuse or neglect and shall not constitute grounds for failure ... to give or accept evidence in any judicial proceeding relating to child abuse or neglect.
Section 210.140 represents an effort by the legislature to deal with the serious problem of child abuse by which it made a specific choice not to protect privileged communications between doctors, psychologists, and licensed counselors and their patients when the communications involve child abuse or neglect. State v. Ward, 745 S.W.2d 666, 670 (Mo.banc 1988). The statute contains broad language and applies to both civil and criminal proceedings which relate to child abuse or neglect. State ex rel. D.M. v. Hoester, 681 S.W.2d 449, 451-52 (Mo.banc *102 1984). The statute's abrogation of the privilege applies even though the services of the professional may have been sought for reasons unrelated to allegations of sexual abuse. State v. Russell, 872 S.W.2d 866, 868-69 (Mo. App. S.D.1994).
Roth v. Roth, 793 S.W.2d 590 (Mo.App. E.D.1990), was a dissolution of marriage action involving a determination of child custody. The father attempted to show that the mother had entered an alcohol treatment center. The mother, however, relied on the physician-patient privilege to prevent introduction of records of that admission. The appellate court held that § 210.140 prevented the mother from invoking the privilege to prevent introduction of the evidence "in any custody proceedings involving known or suspected child abuse or neglect." Id. at 592. The court said:
The trial court has an affirmative duty in ascertaining the best interests of the child. In order to make a sound and prudent judgment, the judge should be able to have at his/her disposal all available pertinent evidence in determining child custody. The legislature has given to the courts the tools to deal with this pervasive issue of child abuse and neglect and the trial courts should use them.
Id.
In the instant case, Father alleged in his amended motion that Mother was mentally unstable and unfit to continue as guardian of the child, had permitted the child to be sexually abused and molested while in her care, and that her conduct constituted the mental, emotional and psychological neglect and abuse of the child. Additionally, Mother's attorney admitted on the record that he had received a document prepared by Dr. Murney indicating that he had evaluated the child and that, while a test administered presented a finding possibly consistent with sexual conflict or molestation, there was insufficient data to suspect abuse. This admission by Mother's attorney, made on the record, indicated that Dr. Murney did address the question of child abuse or molestation in his evaluation of the child. As a result, the psychologist-patient privilege asserted by Mother and honored by Dr. Murney was not applicable.
We also note that Mother was in no position to assert the privilege on behalf of the child:
The privilege ... is personal to the patient. It must be raised, and may be waived, only by the patient. [The doctor's] patient in this case was the child, not the [Mother]. It is undoubtedly true that under ordinary circumstances a parent, as the natural guardian, would have the right to claim the privilege on behalf of [her] child when it would be to the best interests of the minor to do so. But the circumstances here were far from ordinary. The child was not a litigant, but the subject of the proceedings, the purpose of which was to protect his interests and safeguard his welfare. In one sense, [Mother] stood in an adversary position, and the objection was made on her behalf, and in the furtherance of her interests, not that of her child. And, in view of the nature of the proceedings, it was clearly not to his best interests to have excluded the doctor's testimony. Where the privilege is claimed on behalf of the parent rather than that of the child, or where the welfare and interest of the minor will not be protected, a parent should not be permitted to either claim the privilege ... or, for that matter, to waive it.
In re M ___ P ___ S ___, 342 S.W.2d 277, 283 (Mo.App. E.D.1961) (citations omitted); see also State ex rel. Wilfong v. Schaeperkoetter, 933 S.W.2d 407, 409 (Mo.banc 1996).
Father raises another issue which may also arise on remand. He contends that the trial court erred in not permitting him to cross-examine Mother about a prior misdemeanor conviction, because such convictions are admissible to impeach the credibility of a witness. Section 491.050 provides, in pertinent part:
Any person who has been convicted of a crime is, notwithstanding, a competent witness; however, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case.... Such proof may be either by the record or by his own cross-examination, upon which he *103 must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer.
"It is held, beyond all question, that convictions for misdemeanors may be shown, as well as those for felonies." Hoover v. Denton, 335 S.W.2d 46, 47 (Mo.1960). Although an issue was raised at trial that § 491.050 was amended in 1981, nothing in the language of the amendment leads us to believe that misdemeanor convictions can no longer be used as impeachment tools. See State v. Miller, 821 S.W.2d 553, 556 (Mo.App. E.D. 1991). The trial court erred in holding that misdemeanor convictions are not admissible to impeach the credibility of a witness. On remand, the trial court shall admit evidence of Mother's misdemeanor stealing conviction for impeachment purposes.
The judgment is reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Mother has not filed a brief in this court. Although there is no penalty for the failure to file a brief, that leaves this court to decide the case without the benefit of her contentions and authorities. Fischer v. Director of Revenue, 928 S.W.2d 424, 425 n. 1 (Mo.App. S.D.1996).
[2] All Statutory references are to RSMo 1994, unless otherwise indicated. Section 452.377 provides:

A person entitled to the custody of a child shall not change the residence of the child to another state or remove the child from this state for a period of time exceeding ninety days except upon order of the court or with the written consent of the parties with custody or visitation rights. Where the noncustodial person has been given visitation rights by the custody decree, such court permission may be granted only after notice to the person having visitation rights and after opportunity for hearing. Violation of a court order under this section may be deemed a change of circumstance under section 452.410, allowing the court to modify the prior custody decree.