Frances DUNN, Respondent,

v.

WAL–MART STORES, INC., Appellant.

No. 19894.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 19, 1995.

Rehearing Denied Nov. 8, 1995.

James A. Cochrane III, Dale E. Gerecke, Finch, Bradshaw, Strom & Steele, L.C., Cape Girardeau, for appellant.

H. Lynn Henry, Henry, Henry, Henry, Engelbrecht & Williams, P.C., West Plains, for respondent.

CROW, Judge.

Plaintiff, Frances Dunn, sued Defendant, Wal-Mart Stores, Inc., alleging she was injured June 22, 1992, when she slipped "due to a slippery substance, perhaps ice cream, which was on the floor of the aisle of Defendant's store" in Mountain View. A jury rendered a $45,000 verdict for Plaintiff, and the trial court entered judgment thereon.

Defendant appeals, maintaining the trial court erred in: (1) denying Defendant's motion for mistrial based on a comment by Plaintiff's lawyer in opening statement, (2) allowing two undisclosed witnesses to testify for Plaintiff, and (3) excluding evidence tendered by Defendant regarding "safety measures."

The first two claims of error arise from interrogatories 10 and 11 propounded by Defendant to Plaintiff and answered by Plaintiff fifteen months before trial:

"10. Please state the names and addresses of each and every person you expect to call as an expert witness at trial and state the general nature of the subject matter on which each such expert is expected to testify.

ANSWER: Dr. Robert Shaw ...; Dr. Ray Cunningham.... These doctors will testify as to the nature and extent of my injuries.

11. Please state the name, address and business occupation of all persons having knowledge of the nature, extent and duration of any injuries or disabilities you claim to have suffered or sustained as a result of the accident involved in this lawsuit.

ANSWER: The doctors listed above."

On the day before trial, Plaintiff filed a document captioned "Supplemental Answers to Defendants [sic] Interrogatories to Plaintiff." It read:

"10. Mary Hass Kimberling, Physical Therapy Specialists, Eighth Street, West Plains, Missouri 65775. Mary Kimberling will be testifying in regard to the general subject area of the anatomy of the spine,

nature of the body components, how they function, the manner of treatment of the soft tissue and disc injuries, the cost of treatment and related matters."

On the morning of trial, Defendant asked the trial court to bar Kimberling from testifying because Plaintiff did not disclose Kimberling until "the last minute."

The trial court asked Plaintiff's lawyer what Kimberling's testimony would be. Plaintiff's lawyer explained that Dr. Cunningham recommended that Plaintiff undergo a course of treatment called "MedX"; that Kimberling has "a MedX machine"; and that Kimberling will testify about "the MedX treatment program," including its duration and cost. Plaintiff's lawyer added:

"I think [Kimberling] is ... a very important part of [Plaintiff's] future medical. And I think that the jury is going to have to have that in order to be able to fix any sort of a reasonable sum for her future damages.... [Plaintiff] had $1,500 in past medical bills; and the MedX treatment we think will cost something in the range of $5,000 for the treatment program as it's usually administered."

The trial court ruled Kimberling was an expert witness who should have been "seasonably disclosed" by Plaintiff pursuant to interrogatory 10. Consequently, the trial court barred Kimberling from testifying.

Plaintiff's lawyer asked whether Defendant's lawyer would stipulate to the cost of the MedX treatment. Defendant's lawyer declined.

Plaintiff's lawyer, addressing the jury in opening statement, said:

"Frances has sustained medical bills thus far of a little over $1,500. She hasn't had the physical therapy which she needs to have, which we think will cost $5,000 or $6,000 or more. Frances has a life—

[Defendant's lawyer]: Judge, I object. He's—He has no evidence of that whatsoever.

[Plaintiff's lawyer]: Well, we'll offer evidence through our client.

THE COURT: All right. Sustained at this time."

Defendant's lawyer requested no further relief.

Later, during direct examination of Plaintiff by her lawyer, this dialogue occurred:

"Q. Now, Frances, Dr. Cunningham also talked to you, and it's in his records, also, about a therapy treatment known as MedX; is that right?

A. That's right.

Q. And have you looked into having that done—

A. Well, no.

Q. —seeing what that—

A. I really haven't because—

Q. Have you checked on the cost of it?

A. Yes.

[Defendant's lawyer]: Objection, Judge. Hearsay.

THE COURT: Well—

[Defendant's lawyer]: He's trying to get around the Court's previous order.

THE COURT: Whether she's checked on it would not, but the next question would be. That will be sustained.

Q. Have you learned what the cost of that would be?

[Defendant's lawyer]: Judge, objection. Hearsay.

THE WITNESS: Between five and—

[Defendant's lawyer]: No foundation.

[Plaintiff's lawyer]: Just one minute.

THE COURT: Sustained."

Defendant's lawyer requested no further relief.

At the close of Plaintiff's evidence, outside the hearing of the jury, Defendant's lawyer addressed the trial court:

"Judge, I would move for a mistrial on the basis that [Plaintiff's lawyer] argued, despite your previous order, that she's going to have to pay five or six thousand dollars for this [MedX] program, when the evidence never got in. He did it strictly to circumvent your previous ruling about not allowing his expert witness to testify. The jury has already heard it. I think it's prejudicial. And, for the record, I would move for a mistrial at this time."

The trial court denied the motion.

■ Defendant's first point asserts the denial was an abuse of discretion by the trial court and resulted in prejudice to Defendant in that Plaintiff's lawyer "commented in opening statement that [Plaintiff] would need physical therapy that would cost an additional $5,000 to $6,000 or more and [Plaintiff] had no proof of same as [Plaintiff] had been precluded by the trial court in calling an expert witness who would have testified about the cost of the physical therapy."

Defendant cites *Cade v. Atchison, T. & S.F. Ry. Co.*, 364 Mo. 620, 265 S.W.2d 366 (banc 1954), where a judgment for the plaintiff was reversed because of instructional error. The Supreme Court of Missouri gratuitously commented on complaints by the defendant about two instances of misconduct by the plaintiff's lawyer which, said the Court, "when considered together, would have warranted the granting of a new trial by the trial court." *Id.*, 265 S.W.2d at 370. The opinion described one of the instances:

"In his opening statement, plaintiff's counsel said that the doctor who operated on plaintiff 'told him he would need a new operation and he will never be able to work.' Upon objection that this was improper hearsay unless plaintiff brought in the doctor, plaintiff's counsel said: 'I don't intend producing the doctor.' It was certainly improper for plaintiff's counsel to in effect attempt to put in evidence statements that he knew he would not attempt to substantiate by testimony of the witness he purported to quote."

*Id.* at 370[10].

In the instant case, had Defendant moved for a mistrial at the time Plaintiff's lawyer mentioned the cost of the "physical therapy" in opening statement, *Cade* might supply authority for reversal on the ground asserted in Defendant's first point. However, as we have seen, Defendant did not move for a mistrial at that juncture. Defendant merely objected, and the trial court sustained the objection. Defendant's request for mistrial came later, after Plaintiff completed presentation of her evidence.

In *McMillin v. Union Electric Co.,* 820 S.W.2d 352 (Mo.App.W.D.1991), cited by Plaintiff, a party objected to a statement by his adversary during closing argument. The trial court sustained the objection. The objecting party requested no other relief until the end of the argument, when the objecting party moved for a mistrial. The trial court denied the motion. That ruling was assigned as error on appeal. The appellate court held that inasmuch as the request for mistrial was not made at the time of the objection, the request came too late. *Id.* at 355[4]. The opinion added: "The request is waived if it is not made at the time of the improper statements or by proceeding with the trial in a manner inconsistent with the object of the request." *Id.* at [5].

*McMillin* is consistent with *Hacker v. Quinn Concrete Co., Inc.,* 857 S.W.2d 402, 410[10] (Mo.App.W.D.1993), which holds that when a trial court sustains an objection to improper argument and the objecting party fails to request further remedial action at that time, no error is preserved for appellate review. *Accord: Welch v. Burlington Northern Railroad Co.,* 807 S.W.2d 226, 228[1] (Mo.App.E.D.1991).

Here, unlike *McMillin, Hacker* and *Welch,* the allegedly improper comment by Plaintiff's lawyer occurred during opening statement, not closing argument. However, we see no reason to depart from the rationale of those cases because of that difference. As explained in *Welch:* "By its failure to request a mistrial at the time of the alleged impropriety [the complaining party] implicitly decided that the argument complained of was not so grievous as to require drastic action." 807 S.W.2d at 228.

Here, Defendant received all the relief it asked for when Plaintiff's lawyer mentioned the cost of the "physical therapy" in opening statement. Defendant's request for mistrial came later in the day, after four witnesses (including Plaintiff) had testified in person, two other witnesses had testified by deposition, and Plaintiff had rested her case. Defendant cites no case where denial of such a belated motion for mistrial was held reversibly erroneous.

Finding *McMillin, Hacker* and *Welch* persuasive, we hold that by failing to move for a mistrial at the time the trial court sustained Defendant's objection during Plaintiff's opening statement, Defendant failed to preserve for appellate review any contention that the trial court erred in failing to declare a mistrial.

■ The origin of Defendant's second point, like its first, is the conference between the trial court and counsel on the morning of trial, just before voir dire. Plaintiff's lawyer told the trial court he was going to call two of Plaintiff's co-workers as witnesses. Defendant's lawyer objected because the names of the co-workers had not been disclosed in answer to interrogatory 11, *supra.*

Plaintiff's lawyer replied:

"He's never asked me . . . who those people are. I don't think I'm under any obligation to tell him. And I don't think I'm under any obligation to answer that question anymore than we have.

I think it was clearly referring to the doctors. But if he wants the names of the witnesses, I'll give those to him at this time in supplementation of that interrogatory if the Court thinks that it calls for that sort of response. And the witnesses will be here this afternoon. He can visit with them if he'd like before we start."

After further comment, Plaintiff's lawyer revealed the two co-workers were Kitten Jean Lewis and Rosemary Keeling, "certified nurse's aides" who worked with Plaintiff at the nursing home where she was employed when she was injured at Defendant's store.

The trial court announced it would permit the co-workers to "describe day-to-day activities, things of that nature," but would not allow them to testify "as an expert nurse describing extent of injuries and the like." The trial court stated it would grant Defendant's lawyer time to interview the co-workers prior to their being called.

When Plaintiff called Lewis to testify, Defendant renewed its objection that Lewis had not been disclosed as a witness under interrogatory 11. The trial court adhered to its earlier ruling, stating: "I'm going to overrule that objection. However, if you want . . .

time now to talk to her prior to her being called, I'll permit that."

Defendant's lawyer responded: "No, I don't, Judge. Can that objection also be for the next witness, too?"

The trial court stated, "Yes," and added, "I'll give you time to talk to that witness as well."

Lewis then testified. Nothing in the record indicates Defendant's lawyer accepted the trial court's offer of time to talk to her before her testimony. Lewis' testimony was followed immediately by that of Keeling.

Lewis testified that before Plaintiff slipped at Defendant's store, Plaintiff was very strong and helped other employees lift the patients at the nursing home. Lewis recalled Plaintiff had no problems with her back or legs before the accident. After the accident, said Lewis, Plaintiff was unable to turn patients and would sit and cry in pain.

Keeling testified that before Plaintiff slipped at Defendant's store, Plaintiff was a very hard worker who had no "physical limitations" and never complained about her back or legs. Keeling recounted that after the accident, Plaintiff had back pain and cried on occasion. Keeling added that Plaintiff limped "pretty badly" every time Keeling saw Plaintiff after the accident.

Defendant's second point:

"The trial court erred in allowing [Plaintiff] to call two lay persons as witnesses during the trial of this matter because the names and identities of these persons were not disclosed in a timely manner to [Defendant] in that [Plaintiff] only informed [Defendant] of the identity of these persons on the day of trial and [Plaintiff] failed to timely supplement her answers to interrogatories revealing the identity of the persons."

The point is obviously based on the premise that interrogatory 11 required disclosure of Lewis and Keeling. Plaintiff argues that interrogatory 11 did not require disclosure of co-workers, as such persons do not have knowledge of "the nature, extent and duration of any injuries or disabilities" that Plaintiff claims to have suffered as a result of slipping at Defendant's store.

Interrogatories should be presented in language of unmistakable meaning, otherwise they can become a tool for entrapment of the unwary. *Keyte v. Parrish*, 399 S.W.2d 601, 606[12] (Mo.App.1966). Interrogatories should not call for opinions or conclusions of the person interrogated or require him to resort to speculation or conjecture as to what is intended. *State ex rel. Hof v. Cloyd*, 394 S.W.2d 408, 411[9] (Mo. banc 1965).

Here, an argument can be made that interrogatory 11 did not require disclosure of Lewis and Keeling. Indeed, during the conference between the trial court and counsel, Defendant's lawyer told the trial court, "I don't know how you interpret that interrogatory." However, Defendant's lawyer assured the trial court that interrogatory 11 is "the standard interrogatory used in the Cape Girardeau area" for discovering the identity of "family members, co-workers, people who have some knowledge about [a claimant's] disability who may testify, but not medical experts."

Where, as here, an issue arises at trial as to whether a party has provided all the information required by an interrogatory, *Keyte* and *Hof* can be read to suggest that the interrogatory should be construed strictly against the party who propounded it, and any ambiguity should be resolved in favor of the interrogated party. However, we have found no case adopting such a rule and it is unnecessary for us to do so. We shall assume— without deciding—that interrogatory 11 required Plaintiff to disclose witnesses Lewis and Keeling.

In *Crompton v. Curtis–Toledo, Inc.,* 661 S.W.2d 645, 649[3] (Mo.App.E.D.1983), the court held: "[A] Missouri trial court is vested with broad discretion to either admit or reject testimony of a witness whose identify ..., though known to the party tendering said witness, was not revealed to his adversary in answers to ... written interrogatories directed to ascertaining the identity of such witness having knowledge of discoverable material."

Here, Defendant's lawyer conceded that Plaintiff's lawyer had "always mentioned" that he might present some of Plaintiff's co-workers as witnesses. However, said Defendant's lawyer, Plaintiff's lawyer had not decided to do so as of four days before trial.

Plaintiff's lawyer told the trial court he did not know the identities of Lewis and Keeling until Plaintiff called him the day before trial. However, Plaintiff herself undoubtedly knew their identities when she answered Defendant's interrogatories.

■ Where a party fails to disclose information required in discovery, a trial court, prior to imposing sanctions on such party, will first determine whether in the particular situation the opposing party has been prejudiced. *Crompton,* 661 S.W.2d at 650[4].

Defendant maintains it was prejudiced by Plaintiff's failure to disclose Lewis and Keeling in that Defendant "had no opportunity to call other witnesses to the stand who also may have observed [Plaintiff] and offered differing views of her so-called limitations and disabilities."

Defendant's lament is unsupported by the record. Through one of its interrogatories, Defendant learned the names and addresses of Plaintiff's two employers during the previous five years, the nature of Plaintiff's duties at those places of employment, and the names of Plaintiff's supervisors. As Plaintiff points out, it would have required little effort by Defendant to ascertain, by discovery, the identities of Plaintiff's co-workers at each place of employment. Defendant could then have contacted those individuals to find out what they had observed regarding Plaintiff's physical condition. The record demonstrates no such effort.

Furthermore, Defendant's lawyer declined the trial court's offer of time to interview Lewis and Keeling before they testified. A similar situation was addressed in *One Thousand Bates Redevelopment Corp. v. Guelker,* 883 S.W.2d 103 (Mo.App.E.D.1994). There, a condemnor informed a landowner about three new witnesses three days before trial. The landowner asked the trial court to bar the witnesses from testifying. The trial court denied the request, but offered the landowner's lawyer an opportunity to interview the witnesses before they testified. The landowner's lawyer declined. On appeal by the landowner, the appellate court held the trial court did not abuse its discretion in permitting the new witnesses to testify. *Id.* at 105[3]. Citing *Gassen v. Woy,* 785 S.W.2d 601 (Mo.App.W.D.1990), the court in *One Thousand Bates* held the landowner's lawyer should have availed himself of the opportunity to interview the new witnesses and, if the result of the interview was unsatisfactory, sought additional relief. 883 S.W.2d at 105–106. The court in *One Thousand Bates* concluded that the remedy offered by the trial court was reasonable under the facts before it, *id.* at 106, and affirmed the judgment.

In *Gassen,* a medical negligence case, an expert for the defendant testified on deposition that he had not seen x-rays of the plaintiff. During trial, the plaintiff's lawyer learned the expert had examined the x-rays after the deposition and had made a diagnosis from them. The plaintiff's lawyer objected to testimony by the expert about the x-rays. The trial court offered the plaintiff's lawyer a recess so he could interview the expert about the subject. The plaintiff's lawyer declined. On appeal by the plaintiff, the appellate court said:

"A trial court is vested with broad discretion as to its choice of a course of action during trial when the introduction of evidence is challenged on the ground that it has not been disclosed in response to appropriate discovery. In the sound exercise of that discretion it may admit or reject such evidence or determine and impose other appropriate sanctions.

Here, the sanction selected by the trial court in response to [the plaintiff's] well founded objection to the testimony by [the expert] was to allow [plaintiff] time to prepare for cross-examination by interviewing the witness before he testified. This opportunity was rejected out of hand. Thus, the question is not whether enough time was allowed or whether the trial should have been recessed to the next day. [Plaintiff] sought only exclusion of the evidence.

These facts do not present a case in which the trial court may be convicted of an abuse of discretion. There is no showing that the remedy of an opportunity to interview [the expert] would not have remedied the non-disclosure, a contention [plaintiff] could have advanced only upon testing the value of an interview. Certainly, the arbitrary exclusion of all evidence in such cases is not the only option available to the trial court, although that sanction is open. The very nature of the discretion vested in the trial court recognizes that each case must be determined on its own peculiar facts which bear on the question of whether that discretion has been abused."

785 S.W.2d at 604 (citations omitted).

Consistent with *One Thousand Bates* and *Gassen*, we hold the trial court did not abuse its discretion in the instant case by handling the problem regarding Lewis and Keeling as it did. Inasmuch as Defendant spurned the opportunity to interview Lewis and Keeling before they testified, Defendant cannot demonstrate that interviewing them would have been an inadequate remedy for Plaintiff's nondisclosure. We therefore deny Defendant's second point; however, that does not imply we endorse Plaintiff's lawyer's cavalier approach to discovery. Barring Lewis and Keeling from testifying might not have been an abuse of discretion, although we need not decide that.

■ Defendant's third point complains that the trial court erred in excluding three pages of testimony from the deposition of Marie R. Pollard offered by Defendant. Pollard, an employee of Defendant, worked at the store where Plaintiff slipped. Defendant maintains the excluded testimony related to some of Defendant's safety measures and would have demonstrated that Defendant would have had no notice or knowledge of any condition "which resulted in making the floor of the store unreasonably safe [sic]." Citing *Georgescu v. K Mart Corp.*, 813 S.W.2d 298 (Mo. banc 1991), and other cases, Defendant asserts Plaintiff was required to show Defendant had knowledge of the unsafe condition of its floor.

The excluded testimony began with the revelation that before Plaintiff slipped, Defendant's store at Mountain View had won the "Store of the Year Safety award" and "had gone a year and a half" without an accident by a customer or an employee. The testimony went on to describe Defendant's emphasis on safety and Pollard's role on the "safety committee."

Citing the trial court to *Williams v. Bailey,* 759 S.W.2d 394 (Mo.App.S.D.1988), Plaintiff objected to the testimony on the ground that Defendant's "track record, as far as their safety awards and so on," had nothing to do with whether Defendant was negligent on the day Plaintiff slipped.

In *Williams,* a wrongful death action against a school bus driver and the school district that employed him, the defendants, over the plaintiffs' objection, presented evidence that the driver had never been involved in an accident and was highly regarded by students and school officials. This Court held the receipt of such testimony reversibly erroneous, stating:

"The fact that [the driver] was previously a good driver or a good person does not tend to establish that he was not negligent at the time the fatal accident occurred, and evidence of his prior good record was therefore inadmissible."

*Id.* at 396[2].

In *Gilbert v. Bluhm,* 291 S.W.2d 125 (Mo. 1956), a hotel tenant slipped and fell on a ramp approaching the dining room. She sued. Over her objection, the hotel presented evidence that no one else had fallen at that site for several years. Holding the receipt of such evidence reversibly erroneous, the Supreme Court of Missouri said:

"[E]vidence showing the non-occurrence of other accidents is not competent to show that a place where an accident occurred was reasonably safe and free from danger. Such evidence is held to be inadmissible because it has no reasonable tendency to prove that a place of injury was free from danger and because it raises collateral is-

sues which have a tendency to confuse and mislead the jury."

*Id.* at 132[5].

It is clear from *Williams* and *Gilbert* that the testimony of Pollard about the safety award and the absence of other accidents was inadmissible. Whether some other part of her testimony might have been admissible is a question we need not consider because the three pages were offered en masse. If several facts are included in an offer of proof, some admissible and others inadmissible, then the whole, if properly objected to, is inadmissible. *Lott v. Kjar*, 378 S.W.2d 480, 483–84[1] (Mo.1964). Defendant's third point in denied.

Judgment affirmed.

PREWITT, P.J., and PARRISH, J., concur.