Anne WILKERSON, Appellant,

v.

David PRELUTSKY, M.D.,
et al., Respondent.

No. 79445.

Supreme Court of Missouri,
En Banc.

April 29, 1997.

Michael A. Gross, Eugene H. Fahrenkrog, Jr., St. Louis, for Appellant.

T. Michael Ward, St. Louis, Kevin F. O'Malley, Debra S. Pierce, Paul E. Kovacs, Gary P. Paul, Aaron I. Mandel, Clayton, for Respondent.

Gary E. Snodgrass, Julia A. Gayle, St. Louis, for Amicus Curiae.

HOLSTEIN, Chief Justice.

Plaintiff Anne Wilkerson appeals from a judgment in favor of defendants in a medical malpractice action. She contends that (1) the trial court erred in excluding the testimony of a treating physician regarding causation as a sanction for plaintiff's failure to disclose the name of the physician in response to interrogatories; and (2) the trial court erred in allowing defendants to use certain medical journal articles during direct and cross-examination of expert witnesses. The case was transferred to this Court after opinion. *Mo. Const. art. V, § 10.* The judgment of trial court is affirmed.

## I.

Anne Wilkerson filed a petition against Dr. Prelutsky and St. Mary's Health Center in January of 1989. The action was based on the allegation that plaintiff suffered irreversible brain damage as a result of defendants' professional negligence in treating her.

On October 2, 1986, plaintiff was found unconscious in her car. She was not breathing and had no discernible pulse. The car engine was running and the garage door was

closed. She was taken via ambulance to St. Mary's Health Center in St. Louis. She was treated for carbon monoxide poisoning at St. Mary's.

Fifteen to twenty minutes after arriving at the emergency room, a blood test revealed that plaintiff had a carboxyhemoglobin level of 31.4 percent. This result indicated that 31.4 percent of the hemoglobin in plaintiff's blood was bound up with carbon monoxide. A normal carboxyhemoglobin level is five percent. To treat the poisoning, emergency room staff administered 100 percent oxygen via a "non-rebreather" mask, which precludes reinhalation of exhaled air. After fifteen minutes, plaintiff's carboxyhemoglobin level stood at 17.2 percent. Two hours later, the level was normal.

The next day, plaintiff was moved to a closed psychiatric unit in the hospital. Dr. Prelutsky, an internist, saw plaintiff there every morning from October 3 through 7. During this time, plaintiff's condition was stable. On October 7, however, plaintiff did not recognize Dr. Prelutsky and was generally less responsive. Dr. Prelutsky made notes in plaintiff's chart. Her attending psychiatrist, Dr. Irvin, contacted Dr. Ferry, a neurologist. Dr. Ferry contacted Dr. Davidson, a specialist in hyperbaric medicine at St. Luke's Hospital. St. Luke's Hospital has the only hyperbaric chamber in the St. Louis area. Dr. Davidson testified at trial that he "suggested that it might be worthwhile to attempt to treat" plaintiff using the hyperbaric chamber.

At St. Luke's, plaintiff was treated in the hyperbaric chamber. Hyperbaric oxygen treatment is claimed to be superior to the oxygen mask treatment for carbon monoxide intoxication because it removes carbon monoxide from the tissue rather than just from the blood. The treatment is most successful when administered up to six hours after the poisoning occurs. Dr. Davidson testified that, although plaintiff's condition improved slightly, she remained "quite abnormal" at the conclusion of hyperbaric therapy. Plaintiff avers that Dr. Prelutsky and St. Mary's deviated from the appropriate standard of medical care by failing to consult a neurologist and by failing to immediately transfer her to St. Luke's for hyperbaric oxygen treatments. This negligence allegedly resulted in diffuse cerebral hypoxia (oxygen starvation of the brain), seizures and brain injury, diminishing plaintiff's mental and physical capacities. Plaintiff brought this action.

In 1989, defendants submitted interrogatories. In her answers, plaintiff failed to identify Dr. Davidson as a treating physician or as an expert witness. When asked by Dr. Prelutsky to identify all expert witness intended to be called to testify at trial, plaintiff answered, "To be supplied." In answer to St. Mary's identical question, plaintiff stated that she would be calling standard of care physicians as well as treating physicians, all to be endorsed in the future.

In November 1990, plaintiff gave notice that she planned to take Dr. Davidson's deposition. The deposition was taken on January 25, 1991, but apparently Dr. Davidson did not testify regarding causation. At plaintiff's request, the deposition was recessed, to be continued at a later date, but was never completed. Neither the notice of the deposition nor the deposition are part of the record on appeal.

On May 12, 1992, a stipulated protective order was entered requiring that all expert witnesses be identified by July 15, 1992, and that they be made available for depositions before September 1, 1992. On July 1, 1992, plaintiff submitted several names of treating physicians and experts expected to testify but did not identify Dr. Davidson. Plaintiff also stated that any of her treating physicians might be called as experts on the issues of standard of care, causation and damages.

A commissioner was appointed on December 2, 1992, to preside over discovery proceedings. On January 8, 1993, the parties entered into a consent agreement under which they agreed that each side could identify an additional psychologist and psychiatrist and present them for depositions within specified times. The plaintiff was to identify her psychiatrist and psychologist by January 15, 1993, and produce them for depositions by March 1, 1993. However, regarding other experts, the agreement said that "no additional experts [would] be identified by any party."

On March 24, 1993, plaintiff's counsel sent a letter to defendants clarifying Dr. Davidson's status as a treating physician who would be called to testify as to the cause of plaintiff's brain damage. Defendants immediately moved to bar Dr. Davidson's testimony on causation, and the commissioner granted this motion on May 3, 1993. On June 7, 1993, upon plaintiff's motion, the court continued trial to February 22, 1994, stating that "nothing new" was to be added to the case.

On November 15, 1993, plaintiff filed a supplemental answer to defendants' interrogatories listing 26 expert witnesses, including Dr. Davidson. These experts were to testify on the subjects of negligence, causation, and damages. Defendants moved to strike witnesses not previously identified. The motion was sustained November 30, 1993. The court's order stated that the case would go to trial with the experts and proposed testimony that would have been allowable on June 14, 1993, the original trial date.

On November 16, 1993, plaintiff filed a motion to reconsider the commissioner's order of May 3, 1993. This order barred the testimony of Dr. Davidson on the issue of causation. During a motion in limine conference on February 18, 1994, the trial court denied plaintiff's motion and upheld the commissioner's order. Trial commenced on February 23, 1994. On February 28, 1994, before Dr. Davidson testified, Dr. Prelutsky filed a motion in limine to exclude any testimony by Dr. Davidson concerning standard of care, causation, and damages. This motion was sustained by the trial court.

Dr. Davidson testified at trial as to plaintiff's treatment, but was not allowed to render his opinion as to the cause of plaintiff's injury. Plaintiff was allowed to make an offer of proof at trial as to what Dr. Davidson's expert testimony would have been if allowed.

During cross-examination of plaintiff's expert witnesses and while examining their own experts, defense counsel referred to medical journal articles. On appeal, plaintiff alleges that she objected to the use of the articles on the basis that the articles had not been shown to be authoritative.

## II.

Plaintiff contends that the trial court erred in overruling her motion to vacate the commissioner's order barring trial testimony by Dr. Davidson concerning causation. Plaintiff argues that she was not required to identify Dr. Davidson as an expert witness in response to defendants' interrogatories because Dr. Davidson was not an expert witness engaged in anticipation of litigation. She further argues that, even if she was required to identify Dr. Davidson, her supplemental answer to defendants' interrogatories satisfied any disclosure requirement.

### A.

Before addressing the propriety of the trial court's exclusion of the proposed testimony of Dr. Davidson, we must first determine whether plaintiff has properly preserved and presented the issue for appellate review. Plaintiff's first point on appeal asserts error of the trial court in ruling on a motion in limine. Defendants argue that the trial court's ruling on a motion in limine cannot serve as the basis for error on appeal.

 An in limine ruling is a "preliminary expression of the court's opinion as to the admissibility of evidence" and is subject to change during the course of the trial. *Brown v. Hamid*, 856 S.W.2d 51, 55 (Mo. banc 1993) (quoting *Annin v. Bi–State Dev. Agency*, 657 S.W.2d 382, 385 (Mo.App.1983)). Where an objection has been sustained in a hearing on a motion in limine, an offer of proof must be made at trial. *State v. Purlee*, 839 S.W.2d 584, 592 (Mo. banc 1992). The primary reason for the offer of proof is to preserve the record for appeal:

> While a secondary reason for an offer of proof is that it permits the judge to consider further the claim of admissibility, the primary reason is to include the proposed answer and expected proof in the official record of the trial, so that in case of appeal upon the judge's ruling, the appellate court may understand the scope and effect of the question and proposed answer in considering whether the judge's ruling sustaining an objection was proper.

John W. Strong et al., *McCormick on Evidence* § 51 (4th ed. 1992).

■ In this case, the plaintiff never explicitly attempted to present the evidence at trial nor did she ask the judge on the record at trial to reconsider his ruling on the motion in limine. However, the issue of the court's ruling on the motion in limine was raised at trial. When Dr. Davidson was called as a witness at trial, the court made it clear that it was affirming its prior ruling on the motion. Referring to its in limine ruling, the trial judge reiterated:

> Dr. Davidson may testify as to his treatment. He may not testify as to causation, to standards, or anything like that. So whatever he did and however he treated the plaintiff in this case, certainly he can testify to that. But in terms of causation and damages and those other things, he is going to be limited.

In response to the court's ruling, the plaintiff requested and was permitted to make an offer of proof. Dr. Davidson was subsequently questioned outside the hearing of the jury on matters relating to his expert opinion on causation and damages. The trial court was given a sufficient opportunity to reconsider its ruling on the motion in limine and the plaintiff's offer of proof established an adequate record for appellate review. Thus, plaintiff adequately preserved the error below for review. *See Brown*, 856 S.W.2d at 55.

■ This Court must also determine whether plaintiff has sufficiently identified and presented the issue on appeal. Rule 84.04 provides that in the "points relied on" portion of the brief appellant must "state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." The function of this rule is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review. *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978).

■ In her first "point relied on," plaintiff states:

> The Circuit Court erred in overruling Anne Wilkerson's motion to vacate the commissioner's order barring trial testimony by John Davidson, M.D., concerning causation, because Dr. Davidson was not an expert witness engaged in anticipation of litigation and because in any event Ms[.] Wilkerson had complied with the commissioner's protective order regarding the designation of expert witnesses, in that she provided both defendants with timely notice in her supplemental interrogatory answer of July 1, 1992, that Dr. Davidson might testify on the basis of his expertise on the subject of causation.

Plaintiff's first point inaccurately assigns error to the court's in limine ruling, which was subject to later modification by the trial court, rather than directing error at the subsequent exclusion of the evidence at trial.

■ The point on appeal is technically deficient. However, this Court's policy is to decide a case on its merits rather than on technical deficiencies in the brief. Generally, we will not exercise discretion to disregard a defective point unless the deficiency impedes disposition on the merits. *Brown*, 856 S.W.2d at 53. A brief impedes disposition on the merits where it is so deficient that it fails to give notice to this Court and to the other parties as to the issue presented on appeal. If the defective brief fails to meet that standard, the point will be disregarded, reviewed only for plain error, or the appeal dismissed. *Rules 84.08* and *84.13*. Appellant's first point here provides sufficient notice to the parties and to this Court as to the issues presented on appeal. Thus, we will treat the point as preserved for appellate review.

### B.

The Court now turns to the core question presented by this case: whether the trial court may properly exclude the testimony of a treating physician regarding causation as a sanction for the party's failure to provide the name of the witness in a timely response to the opposing parties' interrogatories.

■ The trial court has broad discretion to control discovery. *E.g., Calvin v. Jewish Hosp. of St. Louis*, 746 S.W.2d 602, 604 (Mo.App.1988). This discretion extends

to the trial court's choice of remedies in response to the non-disclosure of evidence or witnesses during discovery. *See St. Louis County v. Pennington*, 827 S.W.2d 265, 266 (Mo.App.1992). "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Anglim v. Missouri Pac. R.R..*, 832 S.W.2d 298, 303 (Mo. banc 1992), *cert. denied*, 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion. *Id.*

Rule 56.01(b)(1) allows a party to discover the identity and location of witnesses:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including ... the identity and location of persons having knowledge of discoverable matter.

Rule 57.01(a) requires that a party respond to interrogatories "within thirty days after the service of the interrogatories...."

Rule 61.01 grants the trial court broad authority to sanction a party for failing to answer interrogatories or for providing incomplete or evasive answers to interrogatories. It authorizes the trial court to "make such orders in regard to the failure as are just[.]" *Rule 61.01(b)*. These sanctions include, but are not limited to, striking pleadings, dismissing the action, or by rendering a judgment by default against the disobedient party. *Id.*

■ Here, plaintiff, in violation of Rule 56.01(b)(1) and Rule 57.01(a), failed to disclose Dr. Davidson in interrogatory answers either as a treating physician or as an expert witness within the time required by the rules of civil procedure and the trial court's protective order. In her answers to interrogatories filed on July 1, 1992, plaintiff endorsed her treating physicians to testify on the issue of damages. But, Dr. Davidson was never identified as a treating physician in response to interrogatories served on plaintiff. Plaintiff also failed to identify and produce Dr. Davidson as an expert witness within the time frame consented to by all parties in the protective order. Plaintiff did not disclose Dr. Davidson as a potential witness who would testify on any subject until the letter sent by plaintiff's counsel to defendants on March 24, 1993, long after the time for discovery had passed. At that time, defendants moved to bar Dr. Davidson's testimony on causation.

At the time the commissioner considered defendant's motion, the case was more than four years old and was less than two months from the trial date then set. Plaintiff had failed to make a timely disclosure of Dr. Davidson either as a treating physician or expert witness in response to interrogatories. Plaintiff gave no explanation for her failure to timely respond. Under these circumstances, it was within the trial court's discretion to exclude all or part of the proffered testimony of Dr. Davidson as a sanction for failing to comply with the rules of discovery. The trial court did not abuse its discretion in barring Dr. Davidson's testimony on causation.

Plaintiff's argument is premised on the position that Dr. Davidson was a treating physician rather than an expert witness. Citing *Owen v. City of Springfield*, 741 S.W.2d 16, 20 (Mo. banc 1987), *cert. denied*, 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 620 (1988); *Hruban v. Hickman Mills Clinic, Inc.*, 891 S.W.2d 188, 190 (Mo.App.1995); and *DeLaporte v. Robey Building Supply, Inc.*, 812 S.W.2d 526, 535 (Mo.App.1991), plaintiff argues that a witness who has personal knowledge of the events, and who is not engaged by a party in anticipation of litigation, is not an expert witness whose identity must be disclosed before trial.

Plaintiff's argument ignores her failure to timely disclose Dr. Davidson as either a treating physician or as an expert in response to defendants' interrogatories. Although plaintiff relies on Rule 56.01(b)(4) for her contention that she was not required to disclose Dr. Davidson as an expert, she disre-

gards the instruction of Rule 56.01(b)(1). This subsection requires the disclosure of all relevant matters that are not privileged, including "the identity and location of persons having knowledge of discoverable matter." Rule 56.01(b)(1). Because Dr. Davidson was not disclosed in a timely manner as either an expert or fact witness, this Court need not address the question of whether Dr. Davidson was required to be disclosed as an "expert" within the meaning of Rule 56. Whether Dr. Davidson was an expert or a fact witness, it was within the trial court's broad discretion to exclude his entire testimony as a sanction. It follows that it was within the broad discretion provided the trial court by Rule 61.01(b) to impose a lesser sanction and bar only the most prejudicial portion of the proffered testimony, the witness's expert opinion as to causation.

The three cases cited by plaintiff, *Owen*, *Hruban* and *DeLaporte*, are inapposite. In none of those cases was there a complete failure to timely disclose the witness as either a fact witness or as an expert witness in response to proper interrogatories. These cases do not command the result, as plaintiff urges, that in this case the trial court had no discretion to sanction plaintiff.

Plaintiff further argues that her supplemental answer to defendant's interrogatory filed on July 1, 1992, satisfied any notification requirement. Plaintiff's supplemental answer stated:

> Plaintiff may also call as expert witnesses on damages any and all of Plaintiff's treating physicians. Said experts may testify to various aspects of the damage issues including fairness and reasonableness of the medical charges and causal relationship of the treatment provided to the carbon monoxide poisoning.

Plaintiff at that point in time had not identified Dr. Davidson as a treating physician in her interrogatory answers. Plaintiff argues that defendants were aware of Dr. Davidson's status as treating physician by virtue of plaintiff's notice to defendants that plaintiff would depose Dr. Davidson.

■ However, defendants were entitled to rely on plaintiff's answers to interrogatories in determining who they should depose and who to select as their experts. Plaintiff's failure to identify Dr. Davidson in her interrogatory responses could very well have led defendants to believe that plaintiff did not consider Dr. Davidson to be a potential witness in the case. By March 1993, when plaintiff for the first time indicated that Dr. Davidson would be called as an expert on causation, trial was scheduled just a few weeks away and defendants were subject to an order prohibiting them from obtaining new experts to respond to what Dr. Davidson might say. Had the trial court permitted such late disclosure by allowing Dr. Davidson to give expert testimony, defendants would have been burdened with delay and unnecessary expense. Untimely disclosure or nondisclosure of expert witnesses is so offensive to the underlying purposes of the discovery rules that prejudice may be inferred. *Ellis v. Union Elec. Co.*, 729 S.W.2d 71, 75 (Mo. App.1987). The purpose of discovery is not merely to prevent surprise at trial. An equally important purpose is to narrow the issues and thereby facilitate a speedy and less expensive disposition of the case. Moreover, to hold that the trial court has no discretion to impose sanctions for the unexplained late disclosure of witnesses only serves to promote noncompliance with the discovery rules.

■ Finally, the record does not disclose that, as a result of the 1991 deposition, defendant's had actual knowledge that Dr. Davidson was a treating physician. As previously noted, neither the notice of Dr. Davidson's deposition nor the content of the "partial deposition" taken in 1991 are part of the record on appeal. To say that notice of deposition or the deposition imparted actual knowledge of his status as an expert or as a treating physician is pure speculation. It is the appellant's responsibility to prepare the record on appeal. *Rule 81.12*. Matters omitted from the record will not be presumed to be favorable to the appellant. *State v. Ramsey*, 864 S.W.2d 320, 323 (Mo. banc 1993), *cert. denied*, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); *Wykle v. Colombo*, 457 S.W.2d 695, 699–700 (Mo.1970).

Plaintiff's answers to defendants' interrogatories were deficient and, as such, subjected plaintiff to sanctions. The trial court did not err in excluding the opinion testimony of Dr. Davidson.

## III.

Plaintiff also contends that the trial court erroneously permitted respondents to use certain medical journals during direct and cross-examination of expert witnesses without making the required foundational showing of authoritativeness. Apparently, plaintiff's claim here is that the articles were not shown to fall within the "learned treatise" exception to the hearsay rule.

■■■■■ A review of the trial record reveals that plaintiff failed to express an intelligible and timely objection to the use of the articles in question. Plaintiff did not object when defense counsel read from the journal articles. In addition, when an objection was made, it was not based upon a claim of hearsay. The only objections to evidence that can be considered on appeal are those that were properly raised in the trial court. *Rule 84.13(a); e.g., Tranchilla v. Director of Revenue*, 893 S.W.2d 829, 831 (Mo. banc 1995).

### *Conclusion*

The trial court did not abuse its discretion in excluding the testimony of Dr. Davidson regarding causation as a sanction for plaintiff's failure to disclose the name of this witness in response to the defendants' interrogatories. Because plaintiff failed to properly object at trial to the lack of foundation for the medical journal articles, the issue was not preserved for appeal. The judgment of the trial court is affirmed.

BENTON, PRICE and COVINGTON, JJ., concur.

LIMBAUGH, J., dissents in separate opinion filed.

ROBERTSON and WHITE, JJ., concur in opinion of LIMBAUGH, J.

LIMBAUGH, Judge, dissenting.

Fully aware of the deference that must be given trial judges in the exercise of their discretion in controlling discovery, I never-theless conclude that it was an abuse of discretion to prevent Dr. Davidson from testifying as an expert witness.

The majority disputes the fact that defendants had actual knowledge that Dr. Davidson was one of the two principal treating physicians (the other being Dr. Prelutsky, one of the defendants) as far back as November 1990, more than three years before trial. Although it is true that plaintiff failed to list Dr. Davidson as one of the treating physicians in response to interrogatories, defense counsel admitted in oral argument that his co-counsel had been present at Dr. Davidson's deposition in early 1991. Moreover, defense counsel, who had been "noticed-up" for the deposition, was necessarily aware that it was taken by plaintiff for the purpose of preserving the doctor's testimony for use at trial. For defendants now to claim that they were blind sided by the revelation that Dr. Davidson was a treating physician is sheer fiction, and the trial court's countenance of the claim is at the root of the abuse of discretion.

This is not a case in which a party failed to respond to a request to disclose expert witnesses expected to be called at trial. In that instance, a trial court could properly preclude the expert testimony of a non-disclosed expert because the opposing party was given no real opportunity to depose that expert or otherwise prepare for the testimony. Here, however, the plaintiff fielded a request for disclosure of experts with the timely response that any of her treating physicians might be called as experts on the issues of standard of care, causation and damages. At that point, defendants were on notice that Dr. Davidson, a treating physician, was potentially an expert witness, and it would have behooved them to take his deposition, themselves, before discovery was cut off. Instead, defendants shielded themselves with plaintiff's technical non-compliance in answering the original interrogatories about treating physicians. In doing so, the defendants, in effect, sandbagged the plaintiff and abused the discovery process no less than did the plaintiff herself.

Furthermore, sanctions against a party for violations of discovery rules should not be imposed unless the opposing party has been prejudiced by the violations. *Dunn v. Wal–Mart Stores, Inc.,* 909 S.W.2d 728, 733 (Mo. App.1995); *DeLaporte v. Robey Building Supply, Inc.,* 812 S.W.2d 526, 533 (Mo.App. 1991); *State ex rel. Missouri Highway and Transportation Commission v. Pully,* 737 S.W.2d 241, 245 (Mo.App.1987). In this case, the defendants, having full knowledge of Dr. Davidson's involvement as a treating physician and having been given notice that treating physicians may be called as experts, should be hard pressed to claim prejudice.

Under these circumstances, the trial court should have allowed the late endorsement of Dr. Davidson as an expert witness and offered defendants the opportunity to take the doctor's deposition. There was ample time as evidenced by the fact that on March 29, 1993, plaintiff's counsel sent a letter to defendants clarifying Dr. Davidson's status as both a treating physician and an expert witness, but that the trial was not held until eleven months later, in February 1994.

The prejudice to plaintiff resulting from the trial court's abuse of discretion is obvious. Rarely is a treating physician willing to testify against another treating physician. Unquestionably, it is testimony that is much more effective than that from hired, out-of-town experts who were not present at the time the treatment was rendered.

For these reasons, I would reverse the judgment of the trial court and remand for a new trial.