Everett J. BLACKBURN, Flora Blackburn Dempsey, Burnis S. Blackburn, Zella Blackburn Brooks and Luther Blackburn, Appellants,

v.

George David SPENCE, Sylvia Blackburn Steward, Jane Blackburn Stuller, Ora Blackburn Baughman, Robert R. Blackburn, Robert A. Smith and John Hancock Mutual Life Insurance Company, Respondents.

No. 50488.

Supreme Court of Missouri,

Division No. 2.

Dec. 14, 1964.

Riddle, O'Herin & Newberry, Malden,. for appellants.

McHaney, Billings & Welman, Kennett,. for respondents, George David Spence;. Robert A. Smith and John Hancock Mut. Life Ins. Co.

STOCKARD, Commissioner.

Plaintiffs have appealed from a judgment adverse to them in their suit in equity to set aside a deed to certain real estate located in Dunklin County, Missouri.

David S. and Pansy Blackburn acquired the land in question as tenants by the entirety on November 9, 1938. The Blackburns had nine children; Everett, Flora,. Burnis, Zella and Luther who are plaintiffs. in this suit, and Sylvia, Jane, Ora and Robert who are defendants. The deed, which. the plaintiffs seek to have set aside on the basis that it is a forgery is dated January 1, 1945, and purports to convey the land from David S. and Pansy Blackburn to Sylvia Steward, one of the children. It is. admitted that Pansy Blackburn signed the deed; at least there is no contention that

her signature was forged. It was stipulated by the parties that the "signature of David S. Blackburn" appearing on the deed is not in his handwriting. On the reverse side of the deed is what purports to be an acknowledgment by the grantors taken on January 1, 1945, before Henry A. McKay in his capacity as a notary public. As a part of the jurat it is stated that his commission expired on April 11, 1945. It appears that the date of expiration may have been typed in as April 11, 1949 and that the year was marked out in ink and then written in as 1945. However, while Henry A. McKay had previously held a notary's commission which expired on October 15, 1943, he was not a notary public on January 1, 1945. He was subsequently granted a commission as a notary public effective April 12, 1945, which expired on April 11, 1949. There is evidence that at the time the deed was signed it was delivered to Sylvia Steward, the grantee, and appellants do not contend otherwise.

At the trial the testimony of Sylvia Steward and of Jane Stuller was admitted over the objection that they were incompetent to testify under the "dead man's statute," Section 491.010 RSMo 1959, V.A.M.S. The trial court subsequently ruled that the testimony of Sylvia Steward was improperly admitted but made no ruling as to the testimony of Jane Stuller. In our statement of the facts concerning the execution of the deed by David S. Blackburn we shall make no reference to the testimony of either of these witnesses.

David S. and Pansy Blackburn lived on the land, and in 1945 it was subject to a deed of trust in favor of The Prudential Insurance Company to secure a debt in the original amount of $3,600 but which had been reduced to approximately $2,500. When the Blackburns acquired the land in 1938 they took it subject to this deed of trust. The evidence justifies an inference that the Blackburns were not well off financially. Henry A. McKay testified that on January 1, 1945, Mr. and Mrs. Blackburn and their daughters Sylvia and Flora

(Jane?) came to his office, and at the request of Mr. Blackburn he prepared a deed to the land on a regular printed form naming David S. and Pansy Blackburn as grantors and their daughter, Sylvia Steward, as grantee. Pansy Blackburn signed the deed in his presence. Mr. Blackburn was afflicted with palsy, and Mr. McKay testified that "He [David S. Blackburn] started to sign his name and he was nervous and shaking and couldn't even hold the pen, and he said, 'Is it all right for the girl to sign it,' and I said, 'No, not unless you hold her hand. You hold her hand,' and that was Sylvia, and she was sitting over there and not even standing up there when the deed was fixing to be signed. I said, 'Now, you hold Sylvia's hand and I think it will be all right. I have seen it done that way.' "

The deed provided for a consideration of $4,000, and it was also provided therein that "Party of the second part assumes and agree____ to pay Ora Baughman and Jane Stuller the sum of Five Thousand and no/100, who hold a lein [sic] upon this land." Mr. McKay stated that he saw Sylvia give her father some money, but he did not know the amount, and he added that he did not know what the payment was for. On January 2, 1945, the day immediately following the execution of the deed, Mr. Blackburn obtained a cashier's check from the Bank of Kennett payable to The Prudential Insurance Company in the amount of $2,489.80, and on February 6, 1945, the deed of trust was released of record. On July 6, 1946, Mr. Blackburn opened an account and made a deposit of an undisclosed amount with the Cotton Exchange Bank at Kennett, and both he and Mrs. Blackburn signed the signature card. The money deposited was in cash and the bills were old and had "a peculiar odor about them * * * possibly like moth balls." Mr. Blackburn handed the money to the teller "in small groups of currency which were obtained from various places about his person." Mr. and Mrs. Blackburn continued to live on the land in what was called the home

place, and in some of the following years Mr. Blackburn rented some or all of the land to others. In 1950 and 1951, Sylvia Steward and her husband moved on the land in a tenant house, and on some forms prepared at the Dunklin County Agricultural Stabilization Committee, Mr. Blackburn was listed as the landlord, and Amon Steward (Sylvia's husband) was listed as the operator. The representative of this agency admitted, however, that ownership records were not kept up to date.

On November 1, 1951, Pansy Blackburn died, and at that time all the children who did not previously know about the deed to Sylvia obtained actual knowledge of it. The deed was recorded on February 17, 1951. Jane and Ora gave Sylvia a quitclaim deed on November 8, 1951, in which it was stated that "full payment" of the amount provided for in the deed from David S. and Pansy Blackburn to Sylvia had been received by Jane and Ora, and that the quitclaim deed was given in release of the lien mentioned in that deed. Everett P. Blackburn, one of the plaintiffs, testified that he learned about the deed on the day or the day before his mother died, but at no time thereafter during the following six years that his father lived did he talk to his father about it although he did visit with him. On March 18, 1945, Sylvia and her husband gave a deed of trust on the land to secure a note in the amount of $6,250, and on December 27, 1955, the land was sold to Mary Virginia Spence subject to this deed of trust. Everett Blackburn testified that he knew of this sale. Zella, Burnis and Flora, other plaintiffs, also testified, but none stated that they said anything to their father after learning in 1951 about the deed to Sylvia. Robert Blackburn, a defendant, testified that "shortly after" he got out of military service in 1946, his father told him that he had sold the land to Sylvia and had talked to him about buying the farm, and that he tried to buy it from Sylvia. He further stated that at one time he tried to borrow the money

with which to buy it. He also testified that in 1951, his brothers, Everett and Burnis, asked him if he knew that their father had sold the farm to Sylvia, and that they told him that they had already talked to a lawyer. Subsequently, Robert also talked to the same lawyer. Robert testified that after the sale of the land to Sylvia, his father bought another farm, but neither the size of it nor the price paid is set forth. Subsequently, Mr. Blackburn sold that farm. Mr. Blackburn died in 1957 at age 83 while living in Florida with Sylvia. This suit was filed on August 11, 1958.

Appellants assert that the trial court erred "in admitting the testimony of Jane Blackburn Stuller concerning the transaction in which David S. Blackburn and Pansy Blackburn were purported to have sold their farm to Sylvia Steward," and in our statement of the facts we have made no reference to testimony by her. They do not set forth the relief to which they believe they are entitled, that is, a new trial or only that we review the law and evidence without considering this testimony. Jane was present when the deed was signed in the office of Mr. McKay. In the deed it was provided that Sylvia should pay part of the consideration to Jane, and subsequently Jane executed a quitclaim deed to Sylvia in which she acknowledged receipt of the money. The only testimony of Jane bearing on the issue of forgery was that her father's name was signed by Sylvia at the direction of Mr. McKay with her father's consent and while his hand was on Sylvia's hand, and that Sylvia paid her father some money. In other words, the testimony of Jane did no more than corroborate that of Mr. McKay. It might be added that such testimony was against the interest of Jane because she stood to inherit a child's share of the land if the deed be set aside. If upon all the other evidence, without considering the testimony of Jane, we reach the conclusion as the result of our de novo examination thereof that the deed is not sub-

ject to being set aside, it is immaterial whether the testimony was properly or improperly admitted, and our review shall be so limited.

Appellants assert that the trial court erred in rendering its judgment for the reason that "there was no evidence to support the court's finding and judgment." The theory advanced is as follows: The deed was not signed by David S. Blackburn and was not acknowledged or adopted by him as his signature; the deed was improperly acknowledged and therefore there was no presumption of its execution and genuineness; and respondents failed to sustain the burden of going forward with the evidence because "the testimony of Henry A. McKay, Jane Blackburn Stuller and Robert R. Blackburn was not worthy of belief." As previously noted, we do not consider any of the testimony of Jane Stuller, and Robert was in the army at the time the deed was signed, and he did not testify to any fact pertaining to its execution.

We agree that the deed was not acknowledged. Henry A. McKay was not a notary public or other officer before whom an acknowledgment of a deed of conveyance is authorized to be taken. Section 442.150 RSMo 1959, V.A.M.S. However, except in certain limited situations, of which this is not one, "an acknowledgment is not a requirement for the validity of a deed between the parties." Robb v. N.W. Electric Power Cooperative, Mo., 297 S.W.2d 385, 389. David S. Blackburn would not be entitled to disaffirm the deed because it was not properly acknowledged, and appellants, who claim through him, cannot do so on that ground.

Appellants do not contend that a deed executed by David S. Blackburn in the manner described by Mr. McKay would not be valid. They apparently concede that it would. See Spaeth v. Larkin, Mo., 325 S.W.2d 767; and Woods v. Payne, Mo., 206 S.W.2d 355. Their evidence as to for-

gery went no further than to show that the name of David S. Blackburn on the deed was not in his handwriting, that one and one-half years later he did sign his name to a signature card at a bank, that Mr. McKay was not on January 1, 1945 a notary public, and that certain records in the Dunklin County Agricultural Stabilization Committee indicated that in 1950 and 1951 David S. Blackburn was the owner and Amon Steward the operator of the farm. Whether or not there was a presumption of execution and genuineness of the deed is not particularly important in this case. However, we should mention that the deed had been of record for more than ten years before it was offered and received in evidence at the trial, it was regular on its face, and Sylvia had claimed the land pursuant to such deed for ten consecutive years. Section 490.360 RSMo 1959, V.A.M.S., indicates that in such event such record "shall be prima facie evidence of the execution of such * * * deed, and of its genuineness and time of record." But, assuming for the purposes of this opinion that there is no presumption of execution and of genuineness, as contended by appellants, whether the deed was forged remains an issue of fact, and before appellants are entitled to the exercise by a court of equity of its extraordinary power to set aside a deed, they had the burden of establishing by what is called clear, cogent and convincing evidence the basis, in this case forgery, for the exercise of such power. Spaeth v. Larkin, supra; Hamilton v. Steininger, 350 Mo. 698, 168 S.W.2d 59; Walton v. Van Camp, Mo., 283 S.W.2d 493. When we review the evidence in this case, without considering the testimony of Jane Stuller, and without taking into consideration any presumption of execution and genuineness by reason of recordation, we are compelled to the conclusion that appellants have not established forgery of the signature of David S. Blackburn by clear, cogent and convincing evidence. We shall now set forth the reasons for this conclusion.

■ Other than the fact that the hand-writing is not that of David S. Blackburn, appellants offer no other evidence to indicate that his name was not placed on the deed at his direction and with his consent. On the other hand respondents' evidence, consisting of the testimony of Mr. McKay, gave a reasonable explanation to this fact, and also, if believed, established that the name of David S. Blackburn was placed on the deed at his direction and with his consent. Appellants argue that Mr. McKay is not worthy of belief because the date listed by him for the expiration of his notary commission could not then have been known to him. This, of course, casts some question on his testimony. However, the trial court saw and heard this witness, and it did not disbelieve him. In addition, on the next day, which was the first day the banks were open, David S. Blackburn obtained a certified check to pay off the then existing deed of trust on the land. There is no explanation of where this money came from unless it was paid by Sylvia to Mr. Blackburn as part consideration for the deed. The payment by the grantee of money to the grantor, and the acceptance of the money by the grantor, is inconsistent with the theory that the signature of the grantor was forged. Also, part of the consideration, in fact more than half of it, was to be paid by Sylvia to Jane and Ora, and they subsequently acknowledged receipt of it.

■ We also are impressed by the fact that for at least six years before the death of their father each of the appellants had actual knowledge of the deed from their father to Sylvia. All the appellants but one testified, but not one stated that he had questioned his father about the deed or asked whether or not he had executed it. One admitted that he visited his father but never mentioned the matter to him. Before their father died, Sylvia sold the land, and this was known to at least some of the appellants, if not all, and still they did not mention the matter to their father. One of the appellants admitted that he consulted a lawyer before the death of his father and was advised that "it would be best, the shape he [the father] was in" to wait until his father died before filing this suit. Although the issue of forgery of the signature of David S. Blackburn could have been settled easily and with dispatch while he was alive during the six years after appellants learned of the deed, they elected to wait until death sealed his lips and the "dead man's statute" sealed the lips of the others present except Mr. McKay, and then base their suit on the theory that Mr. McKay was not worthy of belief. Although we do not base our conclusion on the theory of laches, see Rebmann v. Rebmann, Mo., 384 S.W.2d 663; and 30 C.J.S. Equity § 119, we do consider the circumstances we have related as having substantial bearing on the issue of whether appellants have sustained their burden of proof of forgery of the deed by clear, cogent and convincing evidence. When we consider all the evidence in this case, as previously outlined, and the circumstances set forth, we conclude that appellants have failed to establish by the required degree of proof that the signature of their father on the deed dated January 1, 1945 in which Sylvia Steward was named grantee was forged.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.